THE STATE, EX REL. THOMAS DOYLE, PROSECUTOR, v. THE BOARD OF EDUCATION OF THE CITY OF BAYONNE AND GEORGE W. STREEDER.

The act (*Rev. Sup.*, p. 507) provides that no member of any board of aldermen, township committee or other municipal board or body, shall, during the term for which he shall have been elected such member, be eligible for election or appointment to any office to be filled by such board. *Held*, that the general words "other municipal boards," following the particular designation of certain bodies, included all bodies or boards having municipal governmental functions, whether legislative or administrative, and so included the board of education of Bayonne.

On application for *mandamus.*

Argued at November Term, 1891, before Justices DIXON, REED and GARRISON.

For the relator, *William W. Anderson.*

For the defendants, *William D. Edwards* and *James P. Northrop.*

The opinion of the court was delivered by

REED, J. The relator is asking for a writ of *mandamus* commanding the defendants to admit him to the office of sec-

retary of the board of education of the city of Bayonne, and commanding the present incumbent to turn over the books and papers of such office to him.

The relator was formally elected secretary by the board of education on the first Monday in July, 1891, his term to commence on the 1st day of September following. On the said 1st day of September, Doyle, the relator, applied to Streeder, the clerk for the preceding year, for the books, &c., to which application Streeder refused to accede.

On the 8th day of September succeeding the 1st day, the relator, at a meeting of the board of education, offered to assume the duties of secretary, and the board refused to recognize him as such officer. The defendants refused to accede to the demand of Doyle, the relator, because they claim that his election to the position of secretary was a nullity. It appears that Mr. Doyle had, in April, 1890, been elected a member of the board of education and continued in office until July 20th, 1891, at which time he resigned. When he was elected secretary of the board he was a member of that body.

The defendants insist, that he was ineligible for such position by reason of an act passed in 1885. *Rev. Sup., p.* 507, § 6.

This act provides that " no member of any board of aldermen, common council, township committee or other municipal board or body, shall, during the term for which he shall have been elected such member, be eligible for election or appointment to any office that is now or hereafter may be by law required to be filled by such board, council, committee, or body of which he is such member ; *provided*, that this act shall not apply to any office now required by law to be filled from any such appointing body."

It is clear that the board of education of Bayonne is a municipal board ; that Doyle was elected a member, and that during the term for which he was elected he was appointed to an office by the board.

It is admitted that there is no law requiring the secretary of such board to be filled from the membership of the board.

It appears further that the charter of Bayonne (*Pamph. L.* 1872, *p.* 686, § 4) provides that the board of education shall appoint a secretary. From these facts it appears that the appointment of the relator falls within the literal prohibitory language of the statute. He was appointed by a municipal board of which he was a member, during the term for which he was elected, to an office required to be filled by such board, but not to be filled from the appointing body.

The answer of the counsel for the relator to this is, that while it is true that the board of education is a municipal board, that, nevertheless, it is not such a municipal board as comes within the intention of the legislature. The insistence is, that the term "municipal board" is limited by the specification of the particular bodies which precedes the term "municipal bodies." The particular bodies mentioned are boards of aldermen, common councils and township committees. It is argued that the meaning of the general term "municipal body" must be restricted to boards of a kind similar to those particular bodies enumerated. The rule of construction is invoked that general words following specific ones must be construed as designating persons and things *ejusdem generis.*

The bodies specifically mentioned are, it is claimed, legislative bodies, and, therefore, the general term "municipal boards" should be restricted to such other boards as are also legislative.

The canon of construction thus put forward, it may be remarked, is only one of many guides for ascertaining the intention of the legislative body. It is a rule of common sense, resting upon the notion that the legislature has disclosed the general character of the subject upon which it was intent, by the particular things or persons mentioned, and, therefore, when a general supplementary term is used, it had in mind only things or persons of the same general character.

There are other rules designed for the same purpose, and whenever, by the application of one or more of such guides, a contrary intention is apparent, the rule advanced must yield,

for after all, the one thing to be ascertained is, what did the legislature mean?

. The rule mentioned is, itself, a limitation upon the primary rule of construction that words shall be construed according to their ordinary meaning. The sense in which general words, or any words, are intended to be used, furnished the rule of interpretation, and this is to be collected from all sources and by the test of all applicable canons of construction. For an instance, where the specific persons or things mentioned include all of a class, a general term following will not be so restricted, for this would violate another canon of construction, that each word must be accorded some significance. *Fenwick* v. *Schmalz, L. R.*, 3 *C. P.* 313 ; 2 *Just. Inst.* 137.

. So, the mischief aimed at will, by another canon, control the construction of a statute couched in specific as well as general terms. *Doggett* v. *Catterns*, 17 *C. B., N. S.*, 609 ; *State* v. *Hallman*, 3 *McCord* 306.

So, again, the force of the canon of construction now advanced, while recognized, may be modified by the same considerations. For, it is perceived, the question always remains, What are the characteristics of the class which the specified objects disclose? What is the *genus* which was in the legislative mind, and so by consequence, defined the boundaries within which the meaning of the general words is to be confined?

These questions can be solved, not only by an appeal to the specific words employed, but also by scanning the entire act, and by resorting to the usual canons of statutory construction.

Leaving this general ground and turning to the particular question in this case, I am of the opinion that the construction of this act which the counsel for the relator presents is untenable. The limitation which he places upon the meaning of the term " municipal board or body " is too restricted. The construction insisted upon would confine the words to the inclusion of such boards only as are municipal legislatures, standing upon the same footing in this respect as common councils. In my judgment, the words include any municipal

board invested with governmental functions, whether legisla-
tive or administrative. I would arrive at this conclusion from
the character of the functions of the particular bodies men-
tioned. One of them is the township committee. Now, as I
view the governmental scheme framed by the Township act,
the legislative body is the town meeting. It establishes by-
laws and votes directly upon financial and other questions of
governmental policy. The functions of the committee is
almost, if not entirely, restricted to acts of administration.
There may be instances, but I do not recall any, in which the
power lodged in the hands of the township committee can be
properly styled legislative; but its duties are generally only
administrative. Now, upon a comparison of the duties of a
township committee with those of the board of education of
Bayonne, with respect to this particular subject of discussion,
no essential difference is perceptible. The power with which
the board of education is invested is set out in the charter of
Bayonne. *Pamph. L.* 1872, *p.* 686, § 91. It has power to
purchase land, build school-houses, select teachers, make rules
and regulations governing the schools and to make expendi-
tures in its own way of all moneys appropriated. It has the
entire control of a branch of the city government. These
powers are not dissimilar from the general duties of a township
committee, which has to audit accounts of township officers,
superintend the expenditure of township money, fill vacancies
occurring in township offices and assign districts to road
assessors, assess damages for certain local improvement and
administrative functions of a like character.

There certainly exists nothing in the character of a township
committee which would indicate a legislative intention to ex-
clude from the operation of the act bodies like the board of
education of Bayonne.

But if each of the enumerated bodies had happened to have
legislative functions, I would not regard this feature as the
test of the class of boards regarding which the act was passed.
Under the rule of construction mentioned, it is not every ear-
mark which is common to all the specified persons or things

which creates a class. If all common councils and boards of aldermen and township committees happen to have the same number of members, or the same method of electing officers, or any other similar method of procedure or organization, it would never occur to any one that general words in the act must be restricted to boards having the same characteristics.

These are immaterial coincidences which have no significance whatever in disclosing the *genus* or kind of board which the legislature had in mind.

Therefore, to ascertain what is the standard of classification and the extent of the class, we must resort to the other resources; we must inspect the act itself to discover its purpose and the mischief at which it strikes.

The mischief which the act was designed to remedy was the temptation which had seduced members of municipal political corporations to use their influence and votes as members of such bodies to advance their personal interests. This mischievous enticement was equally hurtful to the public service whether it existed in a body having legislative or a board having administrative functions.

The design of the act was to prohibit a member of any municipal organization exercising political power from so abusing his official influence. Differences in respect to the kind of political functions which the respective municipal bodies were organized to perform were not thought of as limitations upon the general meaning of the words used. It was not intended to apply the legislative prohibition to a township committee or borough commission, and yet leave the boards in the large cities, with much more important duties and powers, free to continue the objectionable practices. As already observed, I conclude, that the kind of bodies which the legislature obviously had in mind were those municipal bodies which were invested with any governmental functions, whether legislative or administrative. Within this class is the board of education of Bayonne.

The relator is without any title to the office of secretary, and the writ of *mandamus* is refused, with costs.