JAMES K. GRIMES, PROSECUTOR, v. WILLIAM A. MILLER, CITY CLERK OF THE CITY OF CLIFTON, ET AL., RESPONDENTS.

Submitted May 25, 1934—Decided October 17, 1934.

554

Before Justices TRENCHARD, HEHER and PERSKIE.

For the prosecutor, *Archibald Krieger.*

For the respondents, *John C. Barbour.*

The opinion of the court was delivered by

PERSKIE, J.    The facts in the instant case are stipulated.
They disclose, substantially, the following situation:    The
city of Clifton is a municipality in the county of Passaic,
in this state.    It was incorporated under and is governed by
the provisions of an act of the legislature entitled, "An act
for the incorporation of cities and providing for their officers,
governments and powers." *Pamph. L.* 1899, *p.* 283, and the
several supplements and amendments thereto. *Pamph. L.*
1926, *ch.* 333, *p.* 755; *Pamph. L.* 1927, *ch.* 134, *p.* 248;
*Pamph. L.* 1931, *ch.* 48, *p.* 98; *Pamph. L.* 1933, *ch.* 239,
*p.* 640.

The city council of Clifton consists of ten members, made
up by the election of two from each of the five wards therein.

On February 17th, 1931, the city of Clifton approved a
contract, dated February 3d, 1931, made and executed by
and between the cities of Paterson, Passaic and Clifton, pro-
viding for the creation of the Passaic valley water commis-
sion, under and by virtue of chapter 195 of the laws of 1923,
and which agreement, *inter alia,* provides for the appoint-
ment of four commissioners, two residents from Paterson,
one resident from Passaic and one resident from Clifton.

On February 17th, 1931, John Hamil, a member of the
city council, was appointed by the council to serve as a mem-
ber of this commission, representing the city of Clifton; and

pursuant to the terms of the said agreement, drew a term of office until the first day of January, 1934. Hamil was, and still continues to be a member of the commission, and holds office until his successor is duly appointed and qualifies. The resolution appointing Hamil to the water commission at the time of his appointment, or the legality of his title to the same, was never reviewed or challenged in any suit or proceeding brought for that purpose. The other members of said commission are Arthur S. Hughes, of Passaic, and James Wilson and J. Willard DeYoe, of Paterson; the said James Wilson was also at the time of his appointment and still is a member of the board of finance of the city of Paterson.

On January 5th, 1934, the following resolution was offered for adoption at the organization meeting of the city council of the city of Clifton:

"Resolved that Mr. Crine Kievit, of 17 Hillcrest avenue, be and he is hereby appointed member of the Passaic valley water commission, effective January 1st, 1934, for the term prescribed by the agreement between the city of Paterson, city of Passaic and city of Clifton, approved by the city of Clifton on February 17th, 1931."

On the roll call for votes on the said resolution the five Republican councilmen voted for Crine Kievit, a Republican, and the five Democrat councilmen voted for John Hamil, a Democrat.

The resolution was, within the time required by law in such cases (*Pamph. L.* 1927, *ch.* 134, *p.* 248), presented to Mr. Kievit, mayor of the city of Clifton, for his approval or disapproval, and thereafter, the following certification was entered upon the said resolution, by the city clerk of Clifton:

"I hereby certify that the above recited resolution received a tie vote in the city council on January 1st, 1934, that the said resolution was presented to the mayor for his approval or disapproval and that the said mayor failed within five days to file with him his approval or disapproval of the said resolution and therefore the resolution is taken to be passed by the city council, as provided by *Pamph. L.* 1927, *ch.* 134, *p.* 248."

The said Crine Kievit designated in the resolution was at the time of the passage and adoption of the same, and still is, mayor of the city of Clifton, and his term of office does not expire until December 31st, 1935.

The said Kievit took the oath of office as a member of the water commission on January 8th, 1934, and appeared at a meeting of the commission January 9th, 1934, to attend the regular meeting thereof scheduled to be held at three o'clock in the afternoon, but upon arriving at three-twenty-five o'clock was informed that the meeting had been held and that the members had departed. He has not otherwise entered upon or performed the duties incumbent upon a member of the commission. A rule to show cause signed by Mr. Justice Heher was granted immediately thereafter restraining him from "entering upon the duties of said office until the further order of this court."

Section 23 of article 37, chapter 152 (*Pamph. L.* 1917, *p.* 461—Home Rule act) provides as follows:

"No member of any governing body of any municipality shall, during the term for which he shall have been elected or appointed such member, be eligible for election or appointment to any office required to be filled by any such governing body of which he is then a member; provided, however, that this restriction shall not apply to any office required by law to be filled by a member of such governing body."

The appointment is not within the exception of the act.

Prosecutor assigns four reasons in support of his contention that the resolution in question should be set aside. They are, substantially, as follows: That Kievit, by reason of the tie vote, and his failure to vote, under chapter 134 (*Pamph. L.* 1927), became a member of the governing body and therefore by reason of the aforesaid section of the Home Rule act, was ineligible for appointment; that his failure to vote had the effect of appointing himself to office; that he had become disqualified under all circumstances from voting by reason of his direct and personal concern and interest in the subject-matter, outcome and result; and that his failure to vote was an abuse by him of his official position to place him-

self in office and that his inaction was and is contrary to public policy.

The first question, therefore, presented for determination is whether or not the mayor of the city of Clifton is a member of the governing body of that city? We think that he is.

Whatever the status of the mayor of Clifton may have been under the act of 1898, *supra,* particularly sections 26 and 27 thereof, we are firmly of the opinion that under chapter 134 of the laws of 1927, automatically and by operation of the law, he became a member of the governing body when, as here, he was called upon to cast a vote, in the council, to break a tie vote.

Let us analyze the provisions of the act. Among its several provisions it provides that in the event of any tie vote in the city council on any motion, resolution, ordinance or appointment, &c., within two days of the meeting at which said tie vote was cast, said motion, &c., shall be submitted to the mayor "for his approval or disapproval," and within five days after the meeting at which the tie vote was cast, the mayor "shall file in writing, with the city clerk, his approval or disapproval." The act then provides that his approval "shall be taken and construed to be and to constitute an affirmative vote," while his disapproval "shall be taken and construed to be and constitute a vote against such motion, resolution, ordinance or appointment." The act further provides that in case of the action of the mayor "shall be sufficient to constitute a majority of the whole city council either for or against said motion, resolution, ordinance, appointment or other matter, said motion, resolution, ordinance, appointment or other matter shall be taken to be passed by the city council or defeated, as the case may be; *it being the intention hereof to grant to the mayor the power to vote in case of tie votes in the* city council." In the event of the *failure* of the mayor to file with the clerk his approval or disapproval within the time aforesaid *"it shall be presumed that the action of the mayor was in the affirmative."*

It is quite obvious that the mayor's failure to act, under the provisions of the act was tantamount of an affirmative

vote by him. Does it contravene the provisions of article 37, section 23 (*Pamph. L.* 1917, *ch.* 152) of the Home Rule act? We think so.

The prototype of the provisions of the Home Rule act is found as far back as 1885. *Pamph. L.* 1885, *p.* 178. The disqualification thus continued to be imposed by the legislature was designed to remedy the mischief of the "temptation which had seduced members of municipal corporations to use their influence and votes as members of such bodies to advance their personal interests." It was also designed to prohibit a member of any municipal organization exercising political power from so abusing his official influence. *Doyle* v. *Bayonne,* 54 *N. J. L.* 313; *Burtis* v. *Haines,* 91 *Id.* 4; *affirmed,* 92 *Id.* 248. The resultant inaction of the mayor was not only the equivalent of a direct act contrary to the letter of the law but was a challenge and a defiance of the mischief which the law was designed to remedy. It cannot and should not be sustained.

It seems to us that the mayor was disqualified from participation in his own election because of his self-interest. It is urged that an interest or concern of a public official which operates as a legal barrier is one that is not only selfish and pecuniary *but corrupt. Fredericks* v. *Wanaque,* 95 *N. J. L.* 165, 167. That is the rule applicable in criminal cases. Section 32 of our Crimes act, *Comp. Stat.* 1709-1910, *p.* 1755. In civil cases the rules finds perfect expression in *Sturr* v. *Elmer,* 75 *Id.* 443; 67 *Atl. Rep.* 1059, cited in *Cordingley* v. *Mendham,* 12 *N. J. Mis. R.* 331, 334, and is as follows:

"* * * We may remark that the invalidity of such a contract in no way rests upon the criminal intent of the member of the council. The rule is one of policy, which, without regard to intention, inexorably reaches all contracts which contravene the purposes of the law."

Moreover, it is elementary, fundamental and grounded in sound public policy that personal interest, such as here, creates the disqualification. In the case of *Kuberski* v. *Haussermann,* 113 *N. J. L.* 162, 168; (*Stevens* (*Kuberski*) v. *Hausser-*

*man,* 172 *Atl. Rep.* 738, 741), Mr. Justice Heher, speaking for this court, said:

"His personal interest created the disqualification. Generally, public policy forbids the participation of a member of a municipal governing body in any matter before it which directly or immediately affects him individually. Considerations of public policy require the acceptance of a resignation to make it effective. This requirement is designed to safeguard the public interest, and it follows, as a necessary consequence, that the officer tendering his resignation cannot participate in the procedings or action taken thereon. In the clash of interests—those of the public and the officer who seeks to resign his post—the action to be taken must be determined by a disinterested body."

In 46 *C. J.* 940, § 43 (10), *tit. "Officers,"* it is stated:

"It is contrary to the policy of the law for an officer to use his official appointing power to place himself in office, so that, even in the absence of a statutory inhibition, all officers who have the appointing power are disqualified for appointment to the offices to which they may appoint; nor can an appointing board appoint one of its members to an office, even though his vote is not essential to a majority in favor of his appointment, and although he was not present when the appointment was made, and notwithstanding his term in the appointing body was about to expire; nor can the result be accomplished indirectly by his resignation with the intention that his successor shall cast his vote for him. A statute declaratory of this rule of the common law will be construed liberally so as to give as broad a scope to the remedy provided by it as the language used will justify. Thus remaining in office by the sufferance of the appointing board will not cure such a disability."

"It is contrary to the public policy to permit an officer having the power to appoint to office to exercise that power in his own interest by appointing himself." *Mechem's Public Offices and Officers* (edition 1890), § 112."

The mayor could not break the tie vote by actually and physically casting a vote in favor of the resolution of his

appointment. It, therefore, seems clear to us that he sought to avoid or overcome the objection of a direct vote by taking no action. We fail to see any difference between his casting an affirmative vote and his refraining from voting. The latter, by statute, is the equivalent of the former. In either event the result is the same; it is wrong and contrary to law.

We further desire to point out that this court has considered the status of a mayor and his right to vote in case of a tie vote under the provisions of our Borough act.

In the case of *Freint* v. *Dumont,* 108 *N. J. L.* 245, Mr. Justice Donges, speaking for the court, and relying on the cases of *Hawkins* v. *Cook,* 62 *Id.* 84; *Armstrong* v. *Whitehead,* 67 *Id.* 405, and *Day* v. *Lyons,* 70 *Id.* 114, held that the mayor is not to be computed as a member of the governing body save as mentioned in the act, viz., to constitute a quorum for the transaction of business and to break a tie vote. To like effect is chapter 82. *Pamph. L.* 1934, *p.* 212. While in none of the aforesaid cases, under the Borough act, did a mayor, by his right to break a tie vote, appoint himself to an office, yet for the purpose of breaking a tie vote and to constitute a quorum, he is, under the cited cases and the last mentioned statute, regarded a member of the governing body for the purposes indicated.

The fact that the water commission does not operate exclusively in Clifton is besides the point. The vice lies in the appointment. Nor does the fact that others are on the commission contrary to law justify the illegal appointment of the respondent. With the filing of this opinion a precedent is established. It should serve as a particular guidance for all those who are similarly affected.

The resolution is set aside, with costs.