125 N.J. Super. 87 (1973)
308 A.2d 390
HOWARD F. SKARBNIK, AS COUNCILMAN AND AS TAXPAYER, PLAINTIFF,
v.
SAMUEL A. SPINA AND HARRY BONNET, DEFENDANTS, TOWN COUNCIL OF THE TOWN OF WEST ORANGE, INTERVENOR-DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided July 30, 1973.
*88 Mr. Howard F. Skarbnik, plaintiff, appeared pro se.
Mr. Samuel A. Spina, defendant, appeared pro se.
Mr. William L'E. Wertheimer, appeared for defendant Harry Bonnet (Messrs. Lum, Biunno & Tompkins, attorneys).
Mr. Thomas E. Durkin, Jr., appeared for intervenor-defendant Town Council of West Orange.
MILMED, J.S.C.
This matter comes before the court on complaint in lieu of prerogative writs and order to show cause seeking the removal of defendant Harry Bonnet from his office as president of the town council of the Town of West Orange (N.J.S.A. 40:69A-180(c)) and his temporary replacement by his immediate predecessor in that office, Robert Mangino; and also the removal of defendant Samuel A. Spina from the office of council representative to the joint meeting of which the municipality is a contracting party (R.S. 40:63-68 et seq.), and his temporary replacement by his immediate predecessor in that office, William Cuozzi, Jr. In the complaint plaintiff, as a councilman and taxpayer of West Orange, also seeks injunctive relief and the return of compensation received by defendant officials in their respective offices of council president and council representative to the joint meeting.
Following the hearing of its application therefor on the return date of the order to show cause, leave was granted to the town council to intervene in this action as a party defendant (R. 4:33). The facts are not in dispute. Accordingly, the parties appearing have consented that the *89 court hear the matter as on motion by each of the respective parties for summary judgment, on the pleadings, affidavits and copy of the record filed, and memoranda of law and oral argument submitted.
West Orange is governed by the mayor-council plan B form of government under the Optional Municipal Charter Law, commonly referred to as the Faulkner Act (L. 1950, c. 210; N.J.S.A. 40:69A-49 et seq.). Its town council consists of five members (N.J.S.A. 40:69A-52), elected at large by the voters of the municipality at a regular municipal election, who serve for a term of four years (N.J.S.A. 40:69A-52). The council determines its own rules of procedure, not inconsistent with ordinance or statute (N.J.S.A. 40:69A-180(a)). A majority of the whole number of members of the council constitutes a quorum, with the proviso that no ordinance shall be adopted by the council without the affirmative vote of a majority of all of the members of the council (N.J.S.A. 40:69A-180(a)). The vote on every motion, resolution or ordinance must be taken by roll call, and the yeas and nays must be entered on the minutes, which must be signed by the officer presiding at the council meeting and by the municipal clerk (N.J.S.A. 40:69A-180(b)). Appointments by the council require a majority vote. (Ordinance, Rules of Council 1962, as amended, section 12 (b)).
N.J.S.A. 40:69A-180(c) states in pertinent part that
The council at its organization meeting shall elect a president of the council from among the members thereof and he shall preside at its meetings and perform such other duties as the council may prescribe. * * * [Emphasis supplied]
The president of the council is chosen for a term of one year and may not succeed himself. (Ordinance, Rules of Council 1962, as amended, section 3.) The office carries with it an additional annual salary of $500.
West Orange is a member of a joint meeting organized pursuant to N.J.S.A. 40:63-68 et seq. (construction and *90 maintenance of a joint trunk sewer and sewage disposal plant). The joint meeting consists of "the respective governing bodies or boards having authority to construct sewers and drains therein, of the several municipalities" contracting. N.J.S.A. 40:63-85.
N.J.S.A. 40:63-69 defines the words "joint meeting" as used in the statute as follows:
The words "joint meeting" as used in this article shall mean the meeting or assembly of the members of the governing bodies or boards of the several municipalities having authority to make and enter into contracts for the construction jointly of the works or improvements, authorized by section 40:63-70 of this title.
Another section, N.J.S.A. 40:63-87, states in pertinent part that
Each municipality, through its body or board represented in such joint meeting, shall be entitled to one vote therein, on all motions, resolutions, appointments and all other proceedings taken in or by such joint meeting, subject to the qualifications hereinafter specified; and such vote shall be cast and announced as is directed by a majority of all the members of such municipal body or board present in such joint meeting, whether such members present constitute a quorum of such body or board, or not. If only one member of such municipal body or board be present at the joint meeting, the vote of his municipality may be cast by him.
In regard to West Orange, participation in the actions of the joint meeting is thus confined to members of the town council. Annually the town council elects a member of the council to represent the municipality at the joint meeting for a one-year term. The office carries with it compensation of $2,200 for the year.
At its meeting of June 28 of this year, the town council elected its council president for the next fiscal year, i.e., July 1, 1973 to June 30, 1974, and its representative at the joint meeting for the same one-year term. All five councilmen were present, i.e., Councilmen Bonnet (one of the defendants herein), Cuozzi, Skarbnik (plaintiff), Spina (a defendant) and Mangino (then council president). On the call for nominations for council president, plaintiff Councilman Skarbnik nominated Councilman Cuozzi, and Councilman *91 Cuozzi seconded the nomination. On the roll call the nomination was defeated, Councilmen Cuozzi and Skarbnik voting "aye" and Councilmen Bonnet, Spina and Mangino voting "nay." Councilman Spina then moved the nomination of Councilman Bonnet, the motion being seconded by Councilman Mangino. On the roll call the motion was carried and Bonnet was accordingly elected council president for the ensuing year; Councilman Bonnet, Spina and Mangino voting "aye" and Councilman Cuozzi and Skarbnik voting "nay."
In regard to the council representative at the joint meeting, a resolution designating Councilman Spina to represent the municipality at the joint meeting for the term of one year from July 1, 1973 to June 30, 1974 was introduced. Councilman Cuozzi thereupon nominated Councilman Skarbnik to be the council representative to the joint meeting; Councilman Skarbnik seconding the motion. That motion was defeated, Councilmen Cuozzi and Skarbnik voting "aye" and Councilmen Bonnet, Spina and Mangino voting "nay." Councilman Bonnet then moved the adoption of the resolution appointing Councilman Spina to represent West Orange at the joint meeting, the motion being seconded by Councilman Mangino. On the roll call the motion was adopted by a vote of 3 to 2, Councilmen Bonnet, Spina and Mangino voting "aye" and Councilmen Cuozzi and Skarbnik voting "nay."
The single thrust of plaintiff's claim is that Councilman Bonnet was by reason of self-interest disqualified from voting in favor of the motion electing him to the office of council president, and that Councilman Spina was similarly by reason of self-interest disqualified from voting in favor of the resolution designating or appointing him to represent West Orange at the joint meeting.
Plaintiff relies substantially on the opinion of the court in Tp. Committee, Hazlet Tp. v. Morales, 119 N.J. Super. 29 (Law Div. 1972), which in turn relied substantially *92 upon the opinion of the former Supreme Court in Grimes v. Miller, 113 N.J.L. 553 (Sup. Ct. 1934). Neither holding is applicable in this case. Grimes involved the appointment of the mayor of the City of Clifton to membership in the Passaic Valley Water Commission. There being a tie vote in the city council on the resolution of appointment, it was presented to the mayor for his approval or disapproval. The mayor failed to act on the resolution within the time prescribed by the statute and, the statute providing that in such a situation "it shall be presumed that the action of the mayor was in the affirmative," the city clerk thereupon certified that it was accordingly "taken to be passed by the city council, as provided by Pamph. L. 1927, ch. 134, p. 248."
The court observed that
Section 23 of article 37, chapter 152 (Pamph. L. 1917, p. 461  Home Rule act) provides as follows:
"No member of any governing body of any municipality shall, during the term for which he shall have been elected or appointed such member, be eligible for election or appointment to any office required to be filled by any such governing body of which he is then a member; provided, however, that this restriction shall not apply to any office required by law to be filled by a member of such governing body."
The appointment is not within the exception of the act. [113 N.J.L. at 556]
Holding that the mayor of Clifton, under the applicable statute and by operation of law, became a member of the governing body of the municipality when "he was called upon to cast a vote, in the council, to break a tie vote," the court pointed out that
It is quite obvious that the mayor's failure to act, under the provisions of the act was tantamount of an affirmative vote by him. Does it contravene the provisions of article 37, section 23 (Pamph. L. 1917, ch. 152) of the Home Rule act? We think so.
The prototype of the provisions of the Home Rule act is found as far back as 1885. Pamph. L. 1885, p. 178. The disqualification thus continued to be imposed by the legislature was designed to remedy the mischief of the "temptation which had seduced members of municipal corporations to use their influence and votes as members of *93 such bodies to advance their personal interests." It was also designed to prohibit a member of any municipal organization exercising political power from so abusing his official influence. Doyle v. Bayonne, 54 N.J.L. 313; Burtis v. Haines, 91 Id. 4; affirmed, 92 Id. 248. The resultant inaction of the mayor was not only the equivalent of a direct act contrary to the letter of the law but was a challenge and a defiance of the mischief which the law was designed to remedy. It cannot and should not be sustained.
It seems to us that the mayor was disqualified from participation in his own election because of his self-interest. * * * [Ibid. at 557-558]
In Hazlet the township committee, by a 3 to 2 vote, on December 21, 1971 appointed defendant Joseph A. Morales, a member of the township committee who had been defeated for re-election in the November 1971 election, to membership on the Hazlet Township Sewerage Authority for the term from December 21, 1971 to January 31, 1975, the office carrying with it a salary of $1,500 a year. Morales had voted in the affirmative for his own appointment to membership in the sewerage authority. The appointment was declared void.[1] As pointed out by the court in that case, the applicable statute:
N.J.S.A. 40:14A-1 et seq. provides for municipal and county sewerage authorities. N.J.S.A. 40:14A-5 provides in part:
(c) * * * neither the holding of any office or employment in the government of any county or municipality or under any law of the State nor the owning of any property within the State shall be deemed a disqualification for membership in or employment by a sewerage authority, and members of the governing body of a local unit may be appointed by such governing body and may serve as members of a sewerage authority. * * * [119 N.J. Super. at 32; emphasis supplied]
It is clear that the appointment in Grimes was prohibited by a specific section of the Home Rule Act of 1917, L. 1917, c. 152, later N.J.S.A. 40:46-5.[2] It is equally clear *94 that in Hazlet the applicable statute, N.J.S.A. 40:14A-5, permitted, rather than required, members of the governing body to be appointed by the governing body as members of a sewerage authority.[3] See Tp. Committee, Hazlet Tp. v. Morales, supra, 119 N.J. Super. at 32-33; see also, O'Keefe v. Dunn, 89 N.J. Super. 383 (Law Div. 1965), aff'd o.b., 47 N.J. 210 (1966).
Here, however, the Legislature has specifically made membership in the governing body of the Town of West Orange a prerequisite for election to the office of council president and for participation in actions of the joint meeting of which the municipality is one of the contracting parties. N.J.S.A. 40:69A-180(c), 40:63-85 and 40:63-87. Thus, the group from which elections to these offices can legally be made is, in the Town of West Orange, restricted to five individuals, namely, the members of the town council.
As stated by Justice Burling in his opinion for the Supreme Court in Scatuorchio v. Jersey City Incinerator Authority, 14 N.J. 72 (1953):
It is axiomatic that municipal bodies in this State have no powers other than those delegated by the Legislature, and must perform their prescribed activities within the statutory ambit. [at 85, emphasis supplied]
As previously indicated in this opinion, the applicable statute governing the procedure to be followed by the town *95 council in the performance of its duties provides in pertinent part that
Council shall determine its own rules of procedure, not inconsistent with ordinance or statute. A majority of the whole number of members of the council shall constitute a quorum, but no ordinance shall be adopted by the council without the affirmative vote of a majority of all the members of the council. N.J.S.A. 40:69A-180(a). [Emphasis supplied]
The council's rules of procedure are set forth in its ordinance known as Rules of Council 1962, as amended, which, consistent with the statute, N.J.S.A. 40:69A-180(a), provides in pertinent part that "Three members of the council shall constitute a quorum" (section 7), and that appointments by the council are to be by majority vote at a regular meeting of the council (section 12(b)). The council's rules of procedure also provide that "Except as otherwise specifically provided in these rules, the proceedings of the council shall be governed by Roberts [sic] Rules of Order" (section 13(a)).
It is immediately apparent that plaintiff's suggestion that the nominee for council president and the nominee for council representative to the joint meeting disqualify themselves from voting on their respective nominations would require, for election in either situation, the affirmative vote not of the majority, as legislated, but rather of at least three of the four councilmen remaining. In effect, this would mean that for any such nominee to be elected or appointed, at least four of the five councilmen (three in addition to the nominee) would have to favor the election or appointment. This suggested requirement is not within the letter or spirit of the applicable statute, N.J.S.A. 40:69A-180, and the local rules of procedure adopted pursuant thereto.
There has been no showing here that either of the defendant councilmen was at the time of voting subject to any direct or indirect private interest at variance with the impartial performance of his public duty. Cf. Aldom v. Roseland, *96 42 N.J. Super. 495, 501 (App. Div. 1956). And see, Van Itallie v. Franklin Lakes, 28 N.J. 258, 268-269 (1958). Robert's Rules of Order Newly Revised (1970), provides in chapter XIII, § 44 ("Voting Procedure"):
ABSTAINING FROM VOTING ON A QUESTION OF DIRECT PERSONAL INTEREST. No member should vote on a question in which he has a direct personal or pecuniary interest not common to other members of the organization. For example, if a motion proposes that the organization enter into a contract with a commercial firm of which a member of the organization is an officer and from which contract he would derive personal pecuniary profit, the member should abstain from voting on the motion.
VOTING ON QUESTIONS AFFECTING ONESELF. The rule on abstaining from voting on a question of direct personal interest does not mean that a member is prevented from voting for himself for an office or other position to which members generally are eligible, nor from voting when other members are included with him in a motion. If a member could never vote on a question affecting himself, it would be impossible for a society to vote to hold a banquet, or for the majority to prevent a small minority from preferring charges against them and suspending or expelling them. * * * [at 345]
Each of the councilmen is eligible for either office. Accordingly, the interest of any one of them in either office is "common to other members" of the council, and any one of them is no more disqualified thereby from voting for himself than are the others from voting against him.
For the foregoing reasons plaintiff's motion for summary judgment is denied and defendants' motion for summary judgment is granted, without costs.
NOTES
[1] Cf. N.J.S.A. 40A:9-155.
[2] N.J.S.A. 40:46-5 was repealed by L. 1971, c. 200, effective July 1, 1971. N.J.S.A. 40A:9-175.
[3] The unreported case of Kurz v. Genova, Superior Court, Law Division, Union County, Docket No. L-31265-72 P.W., also referred to by plaintiff, apparently concerned an appointment of a member of the governing body of the Borough of Roselle Park to be the council representative to a "Joint Sewer Commission" (the same joint meeting as that referred to in the instant litigation). In that case the court removed defendant from the position of Roselle Park representative to the "Joint Sewer Meeting" to which he had been appointed by the borough council by a 4 to 3 vote, defendant's vote being one of the four votes cast for the appointment; the Court relying principally upon the opinion in Hazlet.