89 N.J. Super. 383 (1965)
215 A.2d 66
MAURICE A. O'KEEFE, PLAINTIFF,
v.
THOMAS G. DUNN, AS MAYOR OF THE CITY OF ELIZABETH, N.J., AND THE CITY COUNCIL OF THE CITY OF ELIZABETH, N.J., DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided November 10, 1965.
*385 Mr. William Miller attorney for plaintiff.
Mr. Raymond D. O'Brien, City Attorney, for defendants.
FELLER, J.S.C.
This is an action in lieu of prerogative writs in which plaintiff, a member of city council, challenges the right of defendant mayor of the City of Elizabeth, to veto his appointment by city council to the local housing authority. Defendants filed a counterclaim in which they assert that by law plaintiff, as a member of city council, is ineligible for appointment to the office of housing authority commissioner.
Plaintiff was appointed to the City Housing Authority by resolution of the city council on August 10, 1965 by a vote of 8-0. The resolution was submitted to the mayor after the meeting at which the appointment was made. On August 19, 1965 the mayor returned the resolution to the city council marked "disapproved." In an accompanying letter he set out his reasons for the disapproval which, for all intents and *386 purposes, was a veto. On August 24, 1965, with four members excused from voting, the mayor's veto was sustained.
Plaintiff thereafter applied for and obtained an order on September 14, 1965, restraining defendants from nominating or appointing any other person as a member of the authority. On September 17, 1965 plaintiff was restrained from attempting to exercise the duties of a commissioner pending the final outcome of this litigation. The contending parties have presented for consideration several interesting legal questions in this matter.
Plaintiff makes two assertions in support of his position. First, he asserts that the Faulkner Act, under which the City of Elizabeth is governed, does not authorize a mayor to veto a resolution of appointment by the council. With respect to defendants' counterclaim, plaintiff's second assertion is that a member of the city council is eligible for appointment to the Housing Authority of the City.
In response, defendants claim that under the Faulkner Act and its incorporation of general law applicable to all municipalities, the mayor has the power to veto resolutions adopted by city council. In support of their counterclaim they contend that by virtue of R.S. 40:46-5 a member of a governing body is ineligible for appointment as commissioner of a local housing authority.

I.
Consideration of the Faulkner Act as applied to the City of Elizabeth is appropriate. The city established a charter commission to review the need for a new form of city government. In 1959 this commission presented its findings and recommended that the city put to the voters the following proposition:
"Shall Mayor-Council Plan F of the Optional Municipal Charter Law, providing for a division of the municipality into six wards, with nine councilmen (one to be elected from each ward and three to be elected at large), be adopted by the City of Elizabeth." *387 It should be noted that Plan F of the Optional Municipal Charter Law mentioned in the above proposition can be found in the statutory capitulation, Title 40. More specifically, N.J.S.A. 40:69A-74 through 80 describes and specifies the laws applicable to the Mayor-Council Plan F form of government.
The aforementioned proposition was put to the voters and they approved it at a proper election. Thereafter, the City of Elizabeth was to be governed by Plan F and the applicable state statutes specifying the duties and rights under such a form of government.
One of the rights, and therefore duties, of the mayor under the Plan F form of government is that of the veto or approval of ordinances. N.J.S.A. 40:69A-41, which provides:

"40:69A-41. Approval or veto of ordinances; attending meetings
(a) Ordinances adopted by the council shall be submitted to the mayor, and he shall within ten days after receiving any ordinance, either approve the ordinance by affixing his signature thereto or return it to the council by delivering it to the municipal clerk together with a statement setting forth his objections thereto or to any item or part thereof. No ordinance or any item or part thereof shall take effect without the mayor's approval, unless the mayor fails to return an ordinance to the council within ten days after it has been presented to him, or unless council upon reconsideration thereof on or after the third day following its return by the mayor shall by a vote of two-thirds of the members resolve to override the mayor's veto.
(b) The mayor may attend meetings of council and may take part in discussions of council but shall have no vote except in the case of a tie on the question of filling a vacancy in the council, in which case he may cast the deciding vote."
It is significant that the statute provides for the veto power to be exercised only with respect to ordinances. The term "resolution" is conspicuously absent. What effect does this have on the mayor's power to veto?
It is plaintiff's assertion that the Legislature, in leaving out the term "resolution," intended that the mayor's veto power should extend to ordinances only. In support he cites Rhyne, Municipal Law, p. 230 (1957) and 2 Dillon, Municipal Corporations (5th ed.), § 578. Both of these *388 authorities agree that in the absence of a specific delegation of veto power to the mayor, he would have no such power. In the statute quoted above the word "ordinances" appears, but not the word "resolutions." Does this mean that the mayor has no veto power over "resolutions"?
The mayor has veto power only when and to the extent that it is given him by law, and this power cannot be enlarged by construction. His power to approve or veto actions of the municipal legislative body is legislative in nature. That being so, the veto power of a mayor extends only to legislative and not to judicial or administrative actions of the governing body. The veto power is expressed as extending to measures or resolutions of the local legislative body, but in this connection measures or resolutions usually are construed to mean actions of a legislative rather than administrative nature.
The question of whether an action is legislative or administrative so as to govern the application of the veto power has arisen frequently in regard to the action of a council in electing or appointing officers. The majority of courts appears to favor the view that the council's action is not legislative but administrative, and not subject to veto unless provided for in a particular statute or charter provision. 5 McQuillin, Municipal Corporations, § 16.42, pp. 232, 233, 234.
Woodhull v. Manahan, 85 N.J. Super. 157 (App. Div. 1964), affirmed 43 N.J. 445 (1964), states that a resolution, in effect, encompasses all actions of a municipal body other than ordinances. It is to be assumed that the distinction so enunciated has some basis. Certainly, it is frequently stated that the term "ordinances" encompasses matters which are legislative in character, while "resolutions" refer to administrative or procedural matters. Ibid., p. 164; McQuillin, op. cit.
Defendants recognize that N.J.S.A. 40:69A-41 uses only the term "ordinances" and that this term does not embrace actions taken by the council by resolution. However, they contend that this provision in the Faulkner Act is not the sole guide as to the scope of the mayor's veto power. In support *389 of this contention, defendants point to N.J.S.A. 40:69A-26, part of the Faulkner Act. It reads:

"40:69A-26. Laws governing after adoption of optional form of government
Upon the adoption by the qualified voters of any municipality of any of the optional forms of government set forth in this act, the municipality shall thereafter be governed by the plan adopted, by the provisions of this act common to optional plans and by all applicable provisions of general law, subject to the transitional provisions of article 17 of this act, unless and until the municipality should adopt another form of government as provided by law."
Defendants place great emphasis on this provision of the statute and particularly on the clause, "the municipality shall thereafter be governed by the plan adopted, by the provisions of this act common to optional plans and by all applicable provisions of general law." (Emphasis added)
The term "general law" is defined in the Faulkner Act, N.J.S.A. 40:69A-28, as follows:

"40:69A-28. `General law' defined
For the purposes of this act, a `general law' shall be deemed to be any law or provision of law, not inconsistent with this act, heretofore or hereafter enacted which is by its terms applicable or available to all municipalities, and the following additional laws whether or not such additional laws are so applicable or available to all municipalities: legislation relating to taxation, local courts, education, health, public authorities serving more than one municipality, and municipalities in unsound financial condition."
This statutory provision makes all general laws, not inconsistent with the Faulkner Act and applicable to all municipalities, operative with respect to municipalities adopting one of the forms of government found in the act. On this basis, defendants urge that R.S. 40:171-26 is applicable to cities adopting one of the governmental plans found in the Faulkner Act. R.S. 40:171-26 is a general law, part of Revised Statutes, Title 40, c. 170 ("Boards"), art. I ("Cities Generally"), and reads as follows:

*390 "40:171-26. Mayor; powers and duties as to ordinances and resolutions; passage and publication of ordinances, etc.; presiding officer of council, etc.
2. That no mayor hereafter elected in any city in this state shall preside over the council, board of aldermen, or other municipal legislative body of such city, and every ordinance of the aldermen or common council and every resolution of the aldermen affecting the interests of the city shall, before it takes effect, be presented, duly certified, to the mayor, and the report of the clerk shall be conclusive evidence that the said ordinance or resolution has been so presented to the mayor; if he approve it, he shall sign it, if not, he shall return it with his objections and file the same with the clerk within ten days after he received it, and the aldermen or common council shall, at their first regular meeting thereafter, order the objections to be entered at large on the journal, after which they shall proceed to reconsider the same, and if two-thirds of all the aldermen or common council elected shall then pass the same, it shall take effect as a law, but in every such case the votes shall be taken by ayes and nays and entered on the journal; and if such ordinance or resolution shall not be so returned by the mayor within ten days after he shall have received it, it shall become a law in like manner as if he had signed it; provided, always, that each and every ordinance so passed as aforesaid, shall be published for the space of ten days in the official newspapers before such ordinance shall go into effect; and no ordinance or by-laws shall be passed by the said aldermen or common council unless the same shall have been introduced before the aldermen or common council at a previous stated meeting and upon its passage agreed to by a majority of the aldermen or common council elected; and the presiding officer of such board or council shall be annually selected from and by the members of such board by the votes of a majority of the members thereof."
The first thing to note with respect to this statutory provvision is that it gives the mayor the right to veto resolutions. Since the Faulkner Act incorporates general law applicable to all municipalities and not inconsistent with it, defendants contend that this statute supplements N.J.S.A. 40:69A-41. In short, the contention is that the mayor not only has the authority to veto ordinances, but all resolutions.
On the other hand, plaintiff argues that only provisions of the general law which are not inconsistent with the Faulkner Act are applicable. This is definitely what N.J.S.A. 40:69A-28 states. The problem remains as to whether R.S. 40:171-26 is inconsistent with N.J.S.A. 40:69A-41 in that the former gives the mayor the power to veto resolutions while the latter does not. In determining this issue of *391 inconsistency, this court refers again to the distinction previously made between resolutions and ordinances. The latter usually encompass legislative acts, while the former cover procedural acts. The Faulkner Act definitely gives the mayor the authority to veto ordinances. This is consistent with the view that since the mayor is elected by all the people, he should have the authority to review all legislative acts affecting their welfare. It might be added here that this approach closely parallels that taken by the Charter Commission of the City of Elizabeth. On page 3 of their final report, the Commission makes the following statement:
"We believe that the recommended plan will strengthen our city government by centering greater executive responsibility and control in the office of mayor. It will make our city government more responsive to community needs by centralizing policy leadership in the mayor and policy decisions in one legislative body, the city council, with a membership which includes representatives from the city at large as well as from wards."
Still remaining is the question of whether the mayor of Elizabeth has the power to veto resolutions of the city council. It is the considered opinion of this court that he does not. The prime reason for reaching this conclusion is that such power was not granted to him by the Faulkner Act and the city charter enacted pursuant to it. N.J.S.A. 40:69A-41 specifically limits his veto power to ordinances. As was mentioned previously, there is a definite distinction to be made between ordinances and resolutions.
In the case of Woodhull v. Manahan, supra, the court specifically dealt with the distinction to be made, This case concerned the appointment of a municipal attorney in the Town of Morristown. The council appointed the town attorney by resolution. The mayor vetoed the appointment. His power to do so was challenged. The specific law under which the mayor acted, R.S. 40:133-1, gave him authority to veto resolutions. On this basis, the court upheld his right to veto the appointment. However, in deciding in the mayor's favor the court made the following statement:
*392 "Resolutions by their very nature are not legislative acts. If it were the intention of the Legislature in drafting R.S. 40:133-1 et seq., N.J.S.A. to limit the veto power to legislative acts, it would not have included the term `resolutions.'"
Applying this statement to the case in question, there can be no doubt that the Faulkner Act specifically limits the mayor's veto power to ordinances and not resolutions.
Furthermore, with respect to defendants' claim that the mayor derives his veto power over resolutions from R.S. 40:171-26, it need only be mentioned that the statute relied on is inconsistent with N.J.S.A. 40:69A-41 of the Faulkner Act, on which defendants' authority to veto depends. Here reference should be made to Monte v. Milat, 17 N.J. Super. 260 (Law Div. 1952), where the court considered the effect a general law had on a later statute, both of which dealt with the same subject. On this point the court stated the following familiar rules of statutory construction:
"Where there is a conflict between a provision of a general statute and a provision of a later statute, relating to the same subject matter in a more minute and definite way, the latter will prevail over the former and will be considered an exception to the general statute."
The present case presents the very same problem. The Faulkner Act was enacted in 1950, many years after R.S. 40:171-26, enacted in 1886. The former specifically limits the veto power of the mayor to ordinances, while the latter subjects both ordinances and resolutions to that power. There can be no doubt that the Faulkner Act controls with respect to the City of Elizabeth and its mayor. Thus, on the basis of N.J.S.A. 40:69A-41 and the rule of statutory construction set forth in the Monte case, this court is of the opinion that the mayor's power to veto is applicable to ordinances only. It must be assumed that when the Legislature passed the Faulkner Act it was aware of the existence of R.S. 40:171-26 and its explicit provisions, and to have acted the way it did in the light thereof. State v. Federanko, 26 N.J. 119 (1958). The Faulkner Act contains no inference of legislative *393 intent to give the mayor the power to veto resolutions passed by city council.
Further strengthening this position are the rules of procedure and ordinances of the City of Elizabeth. Rule 12 of "An Ordinance to Adopt Rules of Procedure Governing the City Council of the City of Elizabeth," adopted March 28, 1961, reads as follows:

"12. Nominations and Appointments
(a) Nominations submitted by the mayor will be considered in committee of the whole and may be reported to the council at its next regular meeting. Any member of the council may move a nomination.
(b) With respect to appointments to be made by the council, any member of the council may nominate as many candidates as there are offices to be filled. The council will consider such nominations in committee of the whole, which will report to a regular meeting of the council. Where there is a single office to be filled, the sense of the council on the appointment shall be taken as to each nominee, and the nominee receiving a majority shall be deemed appointed. Where there is more than one office to be filled, such as on a board, commission or authority, the same procedure shall be followed with respect to each office separately, until the total number of appointments to be made has been completed. In the discretion of the chair, a group of nominations may be considered at once where there is no apparent division in the council as to the nominees included in the group." (Emphasis added)
The key language here is, "and the nominee receiving a majority shall be deemed appointed." There is no mention of submitting a resolution of appointment to the mayor. Indeed, there should not have been in view of N.J.S.A. 40:69A-41. It is presumed that the council knew this when it adopted this ordinance.
Furthermore, in the final report of the Elizabeth Charter Commission, August 3, 1959, in the section entitled "Safeguards under the Proposed Charter," the following appears:
"3. The mayor has the power of veto over ordinances passed by the council; council may override by a two-thirds vote of its members." (Emphasis added)
As is obvious from a reading of this statement, the mayor does not have the power to veto resolutions. Nowhere is the *394 term "resolution" mentioned with respect to the mayor's veto power.
The administrative Code of the City of Elizabeth, adopted after the Faulkner Act was approved by the voters, provides in section 2.10, in effect, that council will reconsider any ordinance vetoed by the mayor and may pass the same over his veto by the affirmative vote of two-thirds of its members. And section 3.1 provides that the executive power of the city shall be exercised by the mayor and that one of his duties shall be to enforce the charter and ordinances of the city. There is no provision in the Administrative Code giving the mayor the power to veto resolutions or to enforce resolutions. Perhaps it would be better if the mayor had the power to veto resolutions as well as ordinances, but it is this court's opinion that additional legislation would be necessary for this purpose.

II.
Having decided that under the Faulkner Act the mayor does not have the power to veto resolutions, defendants' counterclaim must now be considered. The gist of the counterclaim is that plaintiff, by virtue of his position as a city councilman, is ineligible for appointment to the Housing Authority of the City of Elizabeth. The basis for this contention is N.J.S.A. 40:46-5, which reads, in part:
"No member of any governing body of any municipality shall, during the term for which he shall have been elected or appointed such member, be eligible for election or appointment to an office required to be filled by the governing body of which he is a member, unless such office is required by law to be filled by a member of such governing body * * *."
It is clear that this provision prohibits the appointment by a governing body of one of its members to an office which it is required to fill unless such office is required to be filled by a member of such governing body. In contrast to this statute, there is the Housing Authority Act provision, N.J.S.A. 55:14A-6: "Not more than one commissioner of any authority *395 may be an officer or employee of the municipality or county for which the authority is created." These two statutes seem to be contradictory. The problem now facing this court is to rationalize this apparent contradiction, if it can be done.
As was stated before, the mandate of N.J.S.A. 40:46-5 is clear. But is this rule to be applied in view of the fact that N.J.S.A. 55:14A-6 is on the statute books?
There can be little doubt that the plaintiff is an officer of the City of Elizabeth, since a member of city council is an officer. See Commonwealth v. Witman, 217 Pa. 411, 66 A. 986 (Pa. Sup. Ct. 1907); Van Cleve v. Wallace, 216 Minn. 500, 13 N.W.2d 467, 470 (Minn. Sup. Ct. 1944).
It is true that N.J.S.A. 55:14A-4 requires that five commissioners of the local housing authority must be appointed by the governing body and so, at first glance, N.J.S.A. 40:46-5 would apply. The basic purpose of the latter statute was stated in Grimes v. Miller, 113 N.J.L. 553 (Sup. Ct. 1934), to be:
"* * * designed to remedy the mischief of the `temptation which had seduced members of municipal political corporations to use their influence and votes as members of such bodies to advance their personal interests.' It was also designed to prohibit a member of any municipal organization exercising political power from so abusing his official influence." (at p. 558)
See also 62 C.J.S. Municipal Corporations § 485, p. 921.
Certainly, the Legislature must have been aware that N.J.S.A. 40:46-5 was on the statute books when it passed N.J.S.A. 55:14A-6 in 1948. Keeping this in mind, it is the opinion of this court that when the Legislature enacted this statute it intended to make an exception to N.J.S.A. 40:46-5, and this for the following reasons:
First, the statutory provisions providing for the establishment of a housing authority created an independent public corporation unique in character. It is unique because it is to be simultaneously an agency of municipal, state and federal government. Like no other agency of local government, one *396 of its commissioners is appointed by the State Commissioner of Conservation and Economic Development. Its broad purpose of slum clearance and public housing is to be accomplished by a combination of federal statute, state statute and local ordinances.
Certainly, the court must have had all this in mind when it stated in Tumulty v. Jersey City, 57 N.J. Super. 503 (App. Div. 1959), that under the Local Housing Authorities Law, a local housing authority is not a municipal function, but is a separate independent entity which is a body corporate and politic created by the governing body of a municipality or county, and it is an instrumentality of the municipality or county, exercising public and essential governmental functions. United States Housing Act of 1937, §§ 1 et seq., 9(10)(a), 15(7)(b), 42 U.S.C.A., §§ 1401 et seq., 1409, 1410(a), 1415(7)(b).
A similar position to that taken in Tumulty, was taken in Monte v. Milat, supra, where the court stated that the powers of the authority are derived, not from the municipality, but from the State, and the governing body of the municipality, in deciding upon the desirability of creating an authority and in exercising the power of appointment and removal of its members, is acting merely as a statutory agent. See Riley v. Trenton, 51 N.J.L. 498 (Sup. Ct. 1889); Schwarz v. Dover, 70 N.J.L. 502, 505 (Sup. Ct. 1904). The Monte court further stated:
"* * * The statute restricting appointments in certain cities, R.S. 40:73-5, N.J.S.A., supra, enacted in 1931 is a general law applying to all officers and employees of Hoboken and its subordinate departments. The Local Housing Authorities Law, supra, passed in 1938, is a special law in respect to its provisions dealing with the appointment of housing authority commissioners (R.S. 55:14A-4, N.J.S.A.). Under this statute the Housing Authority of the City of Hoboken was established on May 3, 1949, and defendant's term of office as one of its original commissioners ended on May 3, 1951. Does the mere circumstance that the date, on which this office became vacant and on which the appointment of a commissioner fell due under R.S. 55:14A-4, N.J.S.A., came within the prohibited period under R.S. 40:73-5, N.J.S.A. thereby render his reappointment invalid? I *397 think not. Where there is a conflict between a provision of a general statute and a provision of a later statute, relating to the same subject matter in a more minute and definite way, the latter will prevail over the former and will be considered an exception to the general statute. Goff v. Hunt, 6 N.J. 600, 607 (1951); Ackley v. Norcross, 122 N.J.L. 569, 572 (Sup. Ct. 1939), affirmed 124 N.J.L. 133 (E. & A. 1940)."
Furthermore, in Monte the court proceeded on the assumption that appointments to an independent housing authority are governed by the provisions of the Local Housing Authorities Law and not by the provisions of Title 40. That case dealt with the problem of appointments between the first and third Tuesdays in May in any year in which a commission election was held. Title 40 prohibited such appointments. The court in Monte held that this prohibition did not apply. It is the opinion of this court that the same reasoning should apply here where a provision of Title 40 (N.J.S.A. 40:46-5) is again urged to be applicable to a problem concerning an appointment to a local housing authority board.
Probably the most compelling argument for holding that N.J.S.A. 40:46-5 is inapplicable to appointments to the local housing authority board is that the Housing Authority Act, N.J.S.A. 55:14A-6, specifically allows one member of the governing body to be appointed to such board. The language used in this provision, it is true, is permissive, and so it cannot be argued that the governing body is required to appoint one of its members to the local board, and thus come within the exception of N.J.S.A. 40:46-5. But what can be said is that N.J.S.A. 55:14A-6 creates an exception to N.J.S.A. 40:46-5. Referring again to the Monte case, supra, to support this theory of exception, this court notes the language used in that case with respect to statutory construction  that when there is a conflict between a provision of a general statute and a provision of a later statute, relating to the same subject matter in a more minute and definite way, the latter will prevail over the former and will be considered an exception to the general statute. Furthermore, the court in Monte itself recognized the right of the governing body to *398 appoint one of its own members to the local housing authority board. It said:
"The Legislature, in granting each authority the power `to make and from time to time amend and repeal by-laws, rules and regulations, not inconsistent with this chapter,' in limiting the municipality's representation on the authority to not more than one officer or employee, in granting the authority the right to contract with the municipality to make payments in lieu of taxes, manifested an intention to maintain housing authorities as separate corporate entities." (17 N.J. Super., at p. 265)
There are two other points that this court wishes to mention which lend support to its belief that N.J.S.A. 40:46-5 does not apply to appointments to the local housing board. The original Housing Authority Act, L. 1938, c. 19, § 7, specifically prohibited the appointment of any officer or employee of the municipality to the local housing authority board. In 1948, this provision was amended to read substantially as it does today. As noted earlier in this opinion, it now allows one member of the governing body to be appointed to such board. Having first prohibited and then permitted such appointments, the Legislature must have intended to make an exception to N.J.S.A. 40:46-5.
Furthermore, notice should be taken of the statement attached to the 1948 legislative bill amending the 1938 law which prohibited the appointment of a member of the governing body to the local housing authority board:
"The Statement of purpose should be changed to state:
This bill permits one member of a municipal governing body to be appointed a member of a local housing authority and provides that one member thereof will be appointed by the Public Housing and Development Authority of the State which member will have a vote and be entitled to all the privileges of the other members and for this purpose it does away with an ex-officio member of the authority and enlarges the number of commissioners to six whereas it had formerly been five."
Before the case of Board of National Missions of Presbyterian Church in the United States v. Neeld, 9 N.J. 349 (1952), legislative statements were not given much weight in interpreting *399 the bills to which they were attached. However, in that case Justice Jacobs, in his concurring opinion, set forth the rule that such statements can be of some aid in interpreting the legislation as finally passed. And in Deaney v. Linen Thread Co., 19 N.J. 578, 585 (1955), the court stated:
"We have been able to reach our conclusion from a comparison of the present with the former law and without attaching any particular significance to the legislative history of the 1952 amendment or the explanatory statement appearing on the bill which introduced the amendment. This does not mean, however, that the court has shut its eyes to either. The constraints upon the interpretative process against reference to introducers' statements adverted to in Board of National Missions v. Neeld, 9 N.J. 349, 356 (1952), have given way in favor of the approach to the use of introducers' statements fostered by Mr. Justice Jacobs in his concurring opinion in that case. See State v. Low, 18 N.J. 179, 184 (1955), and cases collected in Sands, Developments in the Field of Legislation, 10 Rutgers L. Rev. 2, 21 (1955). The bundle of extrinsic aids which may be consulted in the interpretation of a statute includes the sponsor's statement which accompanies the legislative bill, but, as in the case of other legislative materials, a considered judgment is exercised in determining the weight which will be attached to it; the introducer's statement, too, may be contradictory, ambiguous or otherwise without substantial probative value in determining legislative meaning." (at p. 584)
In view of the preceding consideration of the applicable statutes, cases and other laws, this court is of the opinion that defendant had no right to veto the resolution appointing plaintiff to the Elizabeth Housing Authority, and that plaintiff is not prohibited from accepting such appointment by virtue of N.J.S.A. 40:46-5.
Therefore, the motion for summary judgment made in behalf of plaintiff is granted and that made in behalf of defendants based on the counterclaim denied. All restraints previously imposed by this court are dissolved.
An appropriate Order shall be submitted pursuant to R.R. 4:55-1.