**HOUSING AUTHORITY OF the CITY OF ASBURY PARK et al., Plaintiffs,**

v.

**Elliott RICHARDSON, Secretary of the United States Department of Health, Education and Welfare, individually and in his official capacity, et al., Defendants.**

**Civ. A. No. 305–72.**

United States District Court, D. New Jersey.

June 22, 1972.

McCarter & English, by Howard Paul Danzig, Newark, N. J., for plaintiffs.

Herbert J. Stern, U. S. Atty., by Furman L. Templeton, Jr., Asst. U. S. Atty., Newark, N. J., for federal defendants.

George F. Kugler, Jr., Atty. Gen., by Virginia Long Annich, Deputy Atty. Gen., Trenton, N. J., for state defendants.

## MEMORANDUM AND ORDER

LACEY, District Judge:

This is an action by twenty Housing Authorities organized under the Local Housing Authorities Law, N.J.S.A. 55:14A–1 et seq., against the United States Departments of Health, Education and Welfare (HEW) and Housing and Urban Development (HUD) and their Secretaries. Also named as defendants are the New Jersey Department of Institutions and Agencies, its Commissioner, the New Jersey Division of Public Welfare, its Director, and the Governor of the State of New Jersey.

Involved herein is the claim that recent changes in New Jersey welfare administration *vis a vis* recipients who live in public housing have caused highly prejudicial and irreparable injury to the solvency of the various Authorities. In order to understand a rather complex situation some background information is necessary.

For a number of years, the New Jersey Division of Public Welfare and HUD developed guidelines for preparing rent schedules for welfare recipients who resided in public housing. The procedure developed was known as the "as paid" system and recognized as a component part of the welfare grant the recipient's actual rent expense, whether paid to a private landlord or a Housing Authority.

In 1970, the Governor's Welfare Study Commission recommended the abolition of the "as paid" system and the substitution therefor of a "flat grant" to welfare recipients. Under this system, of course, there would be no specific earmarking of part of the monthly grant for rent alone. This "flat grant" system was incorporated into the new Financial Assistance Manual (FAM),

which was promulgated by Defendant Engelman pursuant to N.J.S.A. 44:10 et seq. on June 18, 1971. This action was followed by a letter from Defendant Engelman to County Welfare Directors, dated June 7, 1971, which noted that the use of a "fixed family allowance" would make individualized rental contracts with the Housing Authorities "inapplicable to categorial assistance." [Exhibit G attached to plaintiffs' complaint]

Plaintiffs allege that this administrative action by certain of the defendants constitutes an impairment of the obligation of contracts under Article I, Section 10 of the United States Constitution and Article IV, Section 7, paragraph 3 of the New Jersey Constitution. It is not disputed that the old "as paid" system is no longer in effect or that plaintiffs are presently receiving less rental income than before.

In addition, plaintiffs allege that the FAM was not submitted to HEW for its approval, as is required by 42 U.S.C. § 602. They further allege that HUD's application to them of the Brooke Amendments [P.L. 91–152, and P.L. 92–213] to the United States Housing Act of 1937, 42 U.S.C. § 1401 et seq., is arbitrary, capricious, and an abuse of discretion. These amendments limit rents charged by Housing Authorities to 25% of income (as defined by HUD) and further provide that neither rent nor welfare assistance shall be lowered because of this 25% limitation.

Plaintiffs assert subject matter jurisdiction under 28 U.S.C. § 1331, alleging by way of jurisdictional amount that over $1,500,000 a year will be lost because of the rental limitations under both the "flat grant" system and the Brooke Amendments.

The State defendants have filed motions to dismiss under Rules 12(b) (1)

and 12(b) (6) of the Federal Rules of Civil Procedure. The Federal defendants have filed identical motions and affidavits, thus converting the 12(b) (6) motion into one for summary judgment under Rule 56. We shall deal with each set of defendants separately.

### THREE JUDGE COURT

■ Plaintiffs have moved, pursuant to 28 U.S.C. § 2281, et seq., for convening of a three judge court to decide the claimed impairment of the obligation of contracts. Section 2281 reads as follows:

> An interlocutory or permanent injunction restraining the enforcement, operation or execution of any State statute by restraining the action of any officer of such State in the enforcement or execution of such statute or of an order made by an administrative board or commission acting under State statutes, shall not be granted by any district court or judge thereof upon the ground of the unconstitutionality of such statute unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title.

Plaintiffs meet the explicit requirements of the statute. Nonetheless, they are not entitled to the three judge court procedure because, for the reasons hereinafter set forth, they do not present a "substantial federal question." Ex Parte Poresky, 290 U.S. 30, 32, 54 S.Ct. 3, 78 L.Ed. 152 (1933); Majuri v. United States, 431 F.2d 469 (3 Cir. 1970), cert. denied, 400 U.S. 943, 91 S.Ct. 245, 27 L.Ed.2d 248 (1971); Jones v. Branigin, 433 F.2d 576 (6 Cir. 1970), cert. denied, 401 U.S. 977, 91 S.Ct. 1205, 28 L. Ed.2d 327 (1971).

Section 2281 has been given a narrow construction by the Supreme Court.[1]

---

1. Mitchell v. Donovan, 398 U.S. 427, 90 S.Ct. 1763, 26 L.Ed.2d 378 (1970); Bailey v. Patterson, 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962); Florida Lime & Avocado Growers, Inc. v. Jacobsen, 362 U.S. 73, 92–93, 80 S.Ct. 568, 4 L.Ed.2d 568 (Frankfurter, J. dissenting) (1960);

Phillips v. United States, 312 U.S. 246, 61 S.Ct. 480, 85 L.Ed. 800 (1941). Its drain on the orderly operation of the federal court system has been well documented. *See* Ammerman, Three Judge Courts: See How They Run!, 52 F.R.D. 293 (1971); American Law Institute,

The supposedly impaired "contracts" involved here were based on Circular Letter 725, dated December 5, 1969. This letter, from the Division of Public Welfare to the various Housing Authorities, contained an attachment for computing welfare rents. Each Authority was to develop an individualized schedule and submit it for approval to the Division of Public Welfare. *See* Exhibits 12a, 13a, and 14a, attached to the State defendants' brief in support of motion to dismiss.

Our determination that there is no "substantial federal question" is based firstly on our doubt as to whether this rental formula and its application did in fact constitute a contract in the normally used sense of the word. Secondly, even if it did, the attachment itself (Exhibit 10a, attached to the State defendants' motion to dismiss) contains the following paragraph:

> d. Each schedule is applicable to a specific authority and is authorized as a temporary arrangement only, subject to any change at a later date or as the result of any State-wide policy on this subject which may be developed.

It is difficult, in light of this provision for future modification, to infer that the defendants' challenged action constitutes an unconstitutional impairment of contracts.

■■ It is clear that precisely what happened here was a change in State policy. That a State may *never* change its policies concerning welfare recipients is untenable. There are obviously constitutional limitations on a State's power in situations like the present one and an argument might be made that the applicability of the "flat grant" to public housing was without warrant factually. However, administrative irregularities

or questions of policy cannot create a substantial constitutional issue under the facts presented here. To convene a three judge court at this time, when various other issues in this case could in fact render the impairment of contracts claim, such as it is, moot, would be an abuse of this Court's discretion; and it is of course necessary, when the option exists, for a court to decide statutory claims in preference to constitutional ones. California Department of Human Resources v. Java, 402 U.S. 121, 124, 91 S.Ct. 1347, 28 L.Ed.2d 666 (1971); Almenares v. Wyman, 453 F.2d 1075 (2 Cir. 1971), cert. denied, 405 U.S. 944, 92 S.Ct. 962, 30 L.Ed.2d 815 (1972); Serritella v. Engelman, 339 F.Supp. 738 (D. N.J.1972), aff'd per curiam, 462 F.2d 601 (3 Cir. 1972).

## MOTIONS TO DISMISS

### A. Federal Defendants

Defendants HEW, HUD, Richardson, and Romney move to dismiss the complaint for lack of subject matter jurisdiction, for failure to state a claim, and in the alternative, for summary judgment under Rule 56, Fed.R.Civ.P.

■ As to defendants HEW and Richardson, the complaint alleges that the FAM was not submitted to them for approval. Their approval is required under 42 U.S.C. § 602. Plaintiffs seek to enjoin funding of the "flat grant" system until such approval is given.[2]

Plaintiffs do not argue that the "flat grant" system itself is invalid. *See* Rosado v. Wyman, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970). They merely allege a procedural violation of the Social Security Act, the failure to obtain HEW approval. On this motion, made without supporting affidavits, we must view the legal sufficiency of the complaint and cannot dismiss

Study of the Division of Jurisdiction Between State and Federal Courts 282–335 (1969). *And see* S. 1876 (introduced by Senator Burdick on May 14, 1971) and H.R. 3805 (introduced by Congressman Celler on February 8, 1971), both of

which propose strict limitations on the use of three judge courts.

2. Plaintiffs also seek to enjoin approval of FAM as long as the "flat grant" system is contained therein.

[U]nless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. . . .

Conley v. Gibson, 355 U.S. 41, 45–6, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). *See also* Gardner v. Toilet Goods Association, 387 U.S. 167, 87 S.Ct. 1526, 18 L.Ed.2d 704 (1966) ; Cooper v. Pate, 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964) ; Clark v. Uebersee Finanz-Korp., 322 U. S. 480, 68 S.Ct. 174, 92 L.Ed. 88 (1947) ; Cooper v. United States (3 Cir. 3/30,/72) ; Young v. I. T. & T., 438 F. 2d 757 (3 Cir. 1971) ; 2A Moore's Federal Practice ¶ 12.08 at 2267 (1970).

Accordingly, the motions of defendants HEW and Richardson must be denied.

■ The defendants HUD and Romney filed identical motions. However, their affidavits in support of the motion for dismissal under Rule 12(b) (6) mandate treatment as a motion for summary judgment under Rule 56.

The complaint, as directed at these defendants, goes to the issue of HUD's interpretation of the Brooke Amendments and their applicability to public housing. Stripped of all verbiage, plaintiffs claim a *conflict* between HUD's action in encouraging cooperative arrangements with HEW and the Division of Welfare, and its present attitude which, in part through its interpretation of the Brooke Amendments, is causing the Authorities to become insolvent. Significantly, the Secretary has an obligation to meet at least certain deficits sustained by the Housing Authorities. *See e. g.,* 42 U.S. C. § 1410.

Defendants flatly assert that this matter is not justiciable because the question of funding is a matter of discretion with HUD.

It is of course axiomatic that this Court cannot resolve material issues of fact on a motion for summary judgment. *See* Carter v. Stanton, 405 U.S. 669, 92 S.Ct. 1232, 31 L.Ed.2d 569 (1972). We are therefore confronted with the question of whether the claim that the HUD interpretation of the Brooke Amendments conflicts with other statutory duties of the Secretary is of such a nature as is immune from judicial review.

HUD's interpretation is that the Brooke Amendments apply to situations where, as here, "as paid" rental systems were in existence. It is of course clear that such a determination is entitled to great weight. *Cf.* Thorpe v. Housing Authority of City of Durham, 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969). However, an equally strong policy exists in favor of judicial review of administrative orders. Abbott Laboratories v. Gardner, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967).

It is the opinion of this Court that the Secretary's interpretation of the Brooke Amendments is reviewable. Cf. North City Area-Wide Council v. Romney, 456 F.2d 811 (3 Cir. 1972), *rev'g* 329 F. Supp. 1124 (E.D.Pa.1971) ; Housing Authority of the City of Omaha v. United States Housing Authority, 54 F.R.D. 402 (D.Neb.1972). It is alleged in the complaint that HUD and Romney have failed to take curative action that would allow the Authorities to retain their solvency (¶ 40). We read this as an allegation that those defendants have acted in violation of their statutory mandate. Under such a situation, the defense of sovereign immunity is no bar. Dugan v. Rank, 372 U.S. 609, 83 S.Ct. 999, 10 L. Ed.2d 15 (1963) ; Atlee v. Laird, 339 F. Supp. 1347 (E.D.Pa.1972) ; Coalition For United Community Action v. Romney, 316 F.Supp. 742 (N.D.Ill.1970). Cf. Housing Authority of City and County of San Francisco v. United States Department of HUD, 340 F.Supp. 654 (N.D.Cal.1972).

At this time, this Court expresses no opinion on either the merits or the possible problems in fashioning a remedy in an action of this nature.

### B. State Defendants

The State defendants' motions to dismiss assert several grounds. They assert that the Housing Authorities may not sue the State because it is their cre-

ator, that the relief sought is barred by the Eleventh Amendment to the United States Constitution, and that plaintiffs lack standing.

The argument that plaintiffs are in effect "arms" of the State is based on the fact that they are "created" under enabling legislation contained in N.J.S.A. 55:14A-4. We find this argument unpersuasive because of the *sui generis* nature of a Housing Authority.

■■ As noted in O'Keefe v. Dunn, 89 N.J.Super. 383, 396, 215 A.2d 66 (Law Div.1965), aff'd per curiam, 47 N.J. 210, 219 A.2d 872 (1966), a Housing Authority "is unique because it is to be simultaneously an agency of municipal, state and federal government." It is an independent entity which contracts (as a principal) with both the state and federal governments. *Cf.* City of Paterson v. Housing Authority of City of Paterson, 96 N.J.Super. 394, 233 A.2d 98 (Law Div.1967). The State here may have passed the enabling legislation, but the actual "creator" of the Housing Authority was the county or municipality in which it is located. In addition, federal control is dominant in certain areas. *Cf.* Lehigh Const. Co. v. Housing Authority of City of Orange, 56 N.J. 447, 267 A.2d 41 (1970).

We deal here with the interrelationships between the Authorities and the Division of Public Welfare. As such, the issue is closer to that presented in East Orange v. Palmer, 47 N.J. 307, 220 A.2d 676 (1966) than it is to the series of cases typified by City of Newark v. State of New Jersey, 262 U.S. 192, 43 S.Ct. 539, 67 L.Ed. 943 (1922) which are relied on by defendants. *Cf.* Township of River Vale v. Town of Orangetown, 403 F.2d 684 (2 Cir. 1968).

As to the Eleventh Amendment issue, the State asserts that the named defendants Cahill, Clifford, and Engelman are but nominal parties and in fact the suit seeks a money judgment against the State treasury.

An examination of the complaint discloses that plaintiffs seek a declaratory judgment that the FAM and its "flat grant" system are illegal and also seek appropriate injunctive relief. They further ask for readoption of the "as paid" system and funds to make up their losses incurred under the "flat grant" system.

■ We find that no Eleventh Amendment problem exists as to the declaratory and injunctive relief which is sought because an action against state officers to enjoin allegedly unconstitutional acts is not barred by that Amendment. Ex Parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908); Williams v. Eaton, 443 F.2d 422 (10 Cir. 1971). *Cf.* Pennsylvania Environmental Council, Inc. v. Bartlett, 454 F.2d 613, 624–625 (3 Cir. 1971).

As to the portion of the complaint which seeks reimbursement, we feel that any decision on this issue should be deferred pending final hearing on the merits. At that time, if necessary, the substantial issues of the juridical nature of the plaintiffs, consent to suit, and remedy will be decided.

■ We reject the State defendants' claim that plaintiffs lack standing. To say the least, plaintiffs have alleged an economic injury and their interests are certainly within that zone of protection conferred by the interrelationship of the Social Security and Housing Acts. Association of Data Processing Service Organizations v. Camp, 397 U.S. 150, 152–153, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). Undisputably plaintiffs are less solvent than before. Their duty to remain solvent is at issue here.

■ We further find that jurisdiction is present under 28 U.S.C. § 1331. While the precise losses of each Housing Authority are unclear at this time, it is impossible to conclude "to a legal certainty" that each Authority has not suffered in excess of $10,000 in damages. St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 288–290, 58 S.Ct. 586, 82 L.Ed. 845 (1938); Davis v. Schultz, 453 F.2d 497 (3 Cir. 1971). *Cf.*

Opelika Nursing Home v. Richardson, 448 F.2d 658 (5 Cir. 1971); Marquez v. Hardin, 339 F.Supp. 1364 (N.D.Cal. 1969).