JOHN ROBERTSON, MAYOR OF WASHINGTON TOWNSHIP, PLAINTIFF, v. COUNCIL OF WASHINGTON TOWNSHIP AND WASHINGTON TOWNSHIP, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS.

Superior Court of New Jersey
Law Division Gloucester County

Decided February 20, 1985.

*Anthony Rizzo,* for plaintiff.

*John T. McNeill,* for defendants (*Moss, Thatcher, Moss, McNeill & Ferreri,* attorneys).

MILLER, EDWARD S., J.S.C.

Plaintiff seeks a declaratory judgment of a number of issues presented by the establishment of a mayor-council form of government under the Faulkner Act, *N.J.S.A.* 40:69A–1 *et seq.*

By referendum in 1984, the voters of the Township of Washington in Gloucester County, New Jersey replaced the then existing township committee form of government with a mayor-council plan. *N.J.S.A.* 40:69A–31 *et seq.* Pursuant to this new structure of government, a five-member council and a mayor were elected in November, 1984. The council is composed of three Republican members and two Democratic members. The Mayor of Washington Township, who is a Democrat, is plaintiff in this action.

On January 29, 1985, the Council of Washington Township (council) passed by a vote of three-to-two ordinance # 1–1985 adopting an administrative code for the township. At the time the administrative code was passed, the township was operating under a temporary resolution which was set to expire at noon on January 31, 1985.

Upon the adoption of ordinance # 1–1985, the mayor filed an action in lieu of prerogative writs demanding a variety of relief. An order to show cause was granted on January 31, 1985 with a return date of February 20, 1985. The order to show cause

provided, among other things, that the temporary organizing resolution would remain in effect until further order of this court.

Prior to the amended return date of the order to show cause of February 19, 1985, the mayor vetoed ordinance # 1-1985 pursuant to *N.J.S.A.* 40:69A-41. In spite of the mayor's veto, both parties requested on the return date that this court address the issues raised by the mayor's complaint in order to finally resolve these issues. This opinion embodies the oral decision of the court on the return date of the order to show cause and resolves the issues on which the court reserved decision.

The first issue raised in the complaint is the validity of the position of attorney to the council. By law, every municipality is required to appoint a municipal attorney. *N.J.S.A.* 40A:9-139. The proposed administrative code of Washington Township provides for the position of the township attorney within the department of law. In addition, the administrative code creates a second position of attorney for council.

The mayor argues that the position of attorney for council is not authorized by law and is an unlawful divestiture of the functions of the township attorney. The council, on the other hand, argues to the contrary. This court agrees with the mayor.

Under the Faulkner Act, a municipality acting through a mayor-council form of government is organized through administrative departments. *See N.J.S.A.* 40:69A-43(a). The act requires that there be a department of administration and gives the municipality the discretion to create other departments, not to exceed nine in number. *Ibid.* The administrative functions, powers and duties of the municipality, other than those vested in the municipal clerk and tax assessor, are to be assigned to the various departments established. *Ibid.* Each department is headed by a director who is appointed by the mayor with the advice and consent of the council. *N.J.S.A.* 40:69A-43(b).

As already noted above, the position of municipal attorney is mandated by statute. *N.J.S.A.* 40A:9–139. In the case of *Indyk v. Klink*, 121 *N.J.Super.* 314 (App.Div.1972), our Appellate Division held that the power to appoint the municipal attorney resided in the mayor pursuant to *N.J.S.A.* 40:69A–43(a). *Id.* at 320. The court in that case reasoned that although the functions of the municipal attorney may be characterized as legislative or judicial in nature, they are "plainly administrative within the meaning and intent of *N.J.S.A.* 40:69A–43(a)". *Ibid.*

While the council in this case does not quarrel with the fact that the mayor has the power to appoint the municipal attorney, it argues that it should have the power to appoint its own attorney separate and in addition to the municipal attorney. The council tries to differentiate between the functions of the attorney for council and the municipal attorney. It argues that the sole function of the attorney for council is to advise the legislative branch.

This court is of the opinion that such a distinction cannot be made. The Faulkner Act, as outlined above, mandates a governmental structure organized by departments. The creation of the office of attorney for council clearly fragments this structure. In addition, the existence of this office is inconsistent with the reasoning of *Indyk, supra.*

An examination of the functions of the two attorneys as set forth in the administrative code raises an additional problem with the proposed scheme. Both attorneys are required to work on ordinances and resolutions and are to render legal advice to the council. Having two attorneys doing duplicate work creates the potential for confusion and even stalemate in the event that the advice given by both differs.

Taking all of these factors into consideration, the court holds that the provision of ordinance # 1–1985 creating the office of attorney for council is invalid.

The next issue which must be addressed is the status of the temporary organizing resolution. The mayor filed this suit in order to extend the effective date of this resolution to give him time to examine the proposed administrative code. The mayor has since vetoed ordinance # 1–1985, adopting the administrative code. The mayor argues that the court cannot be expected to continue the effect of the temporary organizing resolution should the council continue to pass an administrative code that the mayor refuses to approve.

The mayor, therefore, argues that this court should hold that once this temporary resolution expires, if no administrative code has been adopted, the administrative functions of the township will be in the department of administration, the office of municipal clerk and the office of municipal tax assessor as provided for by *N.J.S.A.* 40:69A–43(a).

The court finds that such a holding would be premature at this junction of the proceedings. The council has not yet considered the actions which it will take in light of the mayor's veto. For this court to anticipate problems which might never even arise is clearly not advisable. Under such circumstances, the court will continue the effect of the temporary organizing resolution for two weeks to give the council the opportunity to respond to the mayor's veto.

The final issue that must be addressed by the court is the extent of the veto power of the mayor. The mayor argues that under *N.J.S.A.* 40:69A–41(a) he has the power to approve parts of an ordinance and to veto other parts. The council argues that the mayor can only approve or veto an entire ordinance. The issue, therefore, which must be resolved by the court is whether the mayor has authority to line-veto portions of an ordinance.

The power of the mayor in regard to ordinances passed by the council is set forth in *N.J.S.A.* 40:69A–41(a) which states:

Ordinances adopted by the council shall be submitted to the mayor, and he shall within ten days after receiving any ordinance, either approve the ordinance by

affixing his signature thereto or return it to the council by delivering it to the municipal clerk together with a statement setting forth his objections thereto or to any item or part thereof. No ordinance or any item or part thereof shall take effect without the mayor's approval, unless the mayor fails to return an ordinance to the council within ten days after it has been presented to him, or unless council upon reconsideration thereof on or after the third day following its return by the mayor shall by a vote of two-thirds of the members resolve to override the mayor's veto.

The mayor's argument that he has the power to line-veto parts of ordinances relies solely on two words, "parts thereof," in the second sentence of *N.J.S.A.* 40:69A–41(a) to the exclusion of the remainder of the language in that section. A close examination of the language used in section 41(a), however, reveals no mechanism for a line-veto.

Looking at the first sentence of section 41(a), the language used clearly gives the mayor only two powers when presented with an ordinance. The mayor can either approve *"the ordinance"* or he can return *"it"* to council with his objections for reconsideration. The wording utilized can only mean the whole ordinance and not merely items as parts thereof. There is absolutely nothing in the first sentence from which the power to line-veto portions of an ordinance can even be implied.

Aside from the language in dispute here, the second sentence which addresses the two means by which an ordinance can become law without mayoral approval tracks the language used in the previous sentence. The focus, therefore, on the whole ordinance is carried over into the remainder of section 41(a).

The importance of the language used in section 41(a) can be illustrated by a comparison with the veto powers of the Governor provided for in the New Jersey Constitution. *See N.J. Const.,* Art. V, § I, ¶ 14 and 15. Under the New Jersey Constitution, the Governor is given a general veto over bills passed by the State Legislature, *N.J. Const.,* Art. V, § I ¶ 14, and a line-veto over appropriation bills, *N.J. Const.,* Art. V, § I, ¶ 15.

Under the general veto power of the Governor, a bill presented to the Governor becomes law:

(1) if the Governor approves and signs it within the period allowed for his consideration; or

(2) if the Governor does not return it to the house of origin, with a statement of his objections, before the expiration of the period allowed for his consideration; or

(3) if, upon reconsideration of a bill objected to by the Governor, two-thirds of all the members of each house agree to pass the bill.

[*N.J. Const.*, Art. V, § I, ¶ 14.]

The language in this constitutional provision and the language used in section 41(a) are closely parallel. In addition, the court notes that the original language of this provision, which was amended in 1981 to address the problems of the pocket-veto, were even more similar to the language utilized by the Legislature in section 41(a).

In contrast, the constitutional provision providing for a line-veto by the Governor sets forth a clearly worded procedure for the use of such a veto. *N.J. Const.*, Art. V, § I, ¶ 15. This provision unequivocally states that the Governor:

... may object in whole or in part to any such item or items while approving the other portions of the bill ... and each item or part so objected to shall not take effect. [*Ibid.*]

The constitutional provision then provides that the parts of the bill not approved are returned to the Legislature for reconsideration. *Ibid.*

At the time *N.J.S.A.* 40:69A–41(a) was passed, the Legislature was fully cognizant of the veto provisions of the New Jersey Constitution. Clearly, if the Legislature intended for a mayor to have a line-veto it would have adopted language similar to Article V, Section 1, Paragraph 15 of the New Jersey Constitution. The court finds it significant that the Legislature did not do so, but instead adopted language tracking the general veto power of the Governor.

To imply the authority to line-veto portions of an ordinance from two words in Section 41(a) totally ignores the whole structure of this section. Taking all of these factors into consideration the court holds that the mayor does not have the authority to veto only parts of an ordinance presented to him by

council under *N.J.S.A.* 40:69A–41(a). *See, e.g., O'Keefe v. Dunn,* 89 *N.J.Super.* 383, 388 (Law Div.1965), aff'd 47 *N.J.* 215 (1965) ("The Mayor has veto power only when and to the extent that it is given him by law, and this power cannot be enlarged by construction.").

Counsel for the Washington Township Council is instructed to submit an order in conformity with this opinion.