{¶ 41} Although I concur with the majority's finding that C.R. Green's reliance on the deposition testimony of the city's expert, David B. Hartt, was proper, I respectfully dissent from the remainder of the majority's opinion. In regard to the mayor's veto, I would hold that the veto was valid.
 {¶ 42} Mayfield Heights, as a charter municipality, is authorized by the Home Rule Amendment of the Ohio Constitution "to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws." The Home Rule Amendment, Section 3, ArticleXVIII, Ohio Constitution.
 {¶ 43} The mayor's veto power, set forth in the city's charter, provides as follows:
 {¶ 44} "Every ordinance or resolution of the Council shall be presented to the Mayor for consideration before it goes into effect. The Mayor, if he or she approves it, shall sign it and file it with the Clerk of Council. The Mayor may approve or disapprove the whole or any item of an ordinance appropriating money, but otherwise his or her approval or disapproval shall be addressed to the entire ordinance or resolution. If he or she disapproves it or any item of it, he or she shall file it with written notice of the disapproval with the Clerk of Council and said disapproval shall be entered by the Clerk of Council in the Journal of Council. Unless an ordinance or resolution is filed with the Clerk with said notice of disapproval within ten days (10) days after its passage by Council, it shall take effect as though the Mayor had signed it on the last day of said ten-day period. When the Mayor has disapproved an ordinance or resolution, or an item of it, as herein provided, the Council may, but not later than twenty-eight (28) days thereafter, reconsider the legislation vetoed by the Mayor and, if upon such reconsideration, the ordinance, resolution or item is approved by the votes of five (5) or more of the members of Council, it shall take effect notwithstanding the veto of the Mayor." Mayfield Heights Charter, Article III, Section 3(C).
 {¶ 45} It is C.R. Green's contention that the mayor's veto power only extends to legislative acts taken through ordinances or resolutions, and not administrative acts. C.R. Green maintains that the mayor's veto of city council was an administrative act and, thus, a nullity, and citesO'Keefe v. Dunn (1965), 215 A.2d 66, a New Jersey case, in support of its position. The majority finds that "[t]he language of the city charter is clear in that it does not give the mayor the power to veto administrative acts."
 {¶ 46} I disagree and would find that the city's charter grants the mayor the authority to veto ordinances and resolutions taken through either legislative or administrative acts. The case of Ellet Hills Mall,Inc. v. Ballad (1975), 49 Ohio App.2d 253, is instructive. In Ellet,
the city of Akron's charter contained language, similar to Mayfield Heights' charter, that every ordinance or resolution of the city council shall be presented to the mayor for approval before going into effect. In considering Ellet's argument that the act of council in approving its plans was administrative, as opposed to legislative and, hence, not subject to a veto by the mayor, the Ellet court held that a city council is without authority to approve an application for a zoning change granted as an administrative act, without mayoral concurrence, where a provision of the city charter requires that every ordinance or resolution "shall, before it goes into effect, be presented to the mayor for approval." Id. at the syllabus.
 {¶ 47} Here, the Mayfield Heights Charter provides that "[e]very ordinance or resolution of the Council shall be presented to the mayor before it goes into effect." (Emphasis added.) Mayfield Heights Charter, Article III, Section 3(C). C.R. Green argues that "[t]he veto power granted to the Mayor of Mayfield Heights by the Mayfield Heights Charter extends only to ordinances or resolutions." (Emphasis in original.) In other words, C.R. Green argues that the mayor's action was a veto of merely "Council's interpretation of the zoning code[,]" rather than a veto of a resolution or an ordinance.
 {¶ 48} The record, however, demonstrates that council did, in fact, pass Resolution No. 2003-7 overturning the planning commission's denial of C.R. Green's request. Thus, there was a resolution before the mayor and the mandatory language of the city's charter validly vested the mayor with veto power.
 {¶ 49} Accordingly, I would overrule C.R. Green's contention that the mayor's veto was invalid.
 {¶ 50} I also disagree with the majority's finding of merit to C.R. Green's contention that the decision to bar the subject use was unreasonable, unlawful and not supported by the preponderance of reliable, probative, and substantial evidence.
 {¶ 51} C.R. Green argues on this point, alternatively from its initial argument that the mayor's veto was invalid, that if the mayor did have veto power over the city council's actions, her action was contrary to law. In particular, C.R. Green contends that the trial court erred in giving deference to the mayor's act because:
 {¶ 52} "`deference' applies to weighing conflicting factual testimony. City Council is the entity which did that, not the Mayor. The Mayor took no testimony. Significantly, the Mayor did not file `conclusion of facts' as required by R.C. 2506.03(A)."
 {¶ 53} Thus, C.R. Green argues that deference should be afforded to city council's decision approving its request, rather than the mayor's decision vetoing city council.
 {¶ 54} In resolving this issue, the majority finds that the "mayor only has the power to veto ordinances and resolutions, not legislative or administrative acts." The majority goes on to state that the "the mayor made no additional findings that would support the appellee's contention that council's decision was an ordinance or resolution." The record clearly demonstrates, however, that council did pass a resolution, to-wit: Resolution No. 2003-7.
 {¶ 55} R.C. 2506.01 governs appeals from decisions of any agency of a political subdivision and provides that:
 {¶ 56} "Every final order, adjudication, or decision of any officer, tribunal, authority, board, bureau, commission, department, or other division of any political subdivision of the state may be reviewed by the court of common pleas of the county in which the principal office of the political subdivision is located as provided in Chapter 2505. of the Revised Code, except as modified by this chapter.
 {¶ 57} "* * *
 {¶ 58} "A `final order, adjudication, or decision' means an order, adjudication, or decision that determines rights, duties, privileges, benefits, or legal relationships of a person, but does not include any order, adjudication, or decision from which an appeal is granted by rule, ordinance, or statute to a higher administrative authority if a right to a hearing on such appeal is provided, or any order, adjudication, or decision that is issued preliminary to or as a result of a criminal proceeding."
 {¶ 59} Accordingly, I would hold that the "order, adjudication, or decision" that was appealed to the trial court was the decision of the mayor vetoing city council's approval of C.R. Green's request. As already discussed, I believe that the city's charter makes it mandatory that the mayor consider all ordinances and resolutions of the city council. The charter does not provide for any appeal of an ordinance or resolution prior to the mayor's review of it. While the charter does provide for reconsideration of the mayor's veto, with five votes needed to overturn the veto, in this case, council's vote to reconsider the veto failed, and the mayor's veto was upheld. Thus, I would find that the decision in this case was "final" when the mayor vetoed city council's approval of C.R. Green's request, at which time the mayor's decision became ripe for appeal and, accordingly, deference should be afforded to the mayor's decision.
 {¶ 60} R.C. 2506.04 provides that upon appeal:
 {¶ 61} "The court may find that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record. Consistent with its findings, the court may affirm, reverse, vacate, or modify the order, adjudication, or decision, or remand the cause to the officer or body appealed from with instructions to enter an order, adjudication, or decision consistent with the findings or opinion of the court. The judgment of the court may be appealed by any party on questions of law as provided in the Rules of Appellate Procedure and, to the extent not in conflict with those rules, Chapter 2505. of the Revised Code."
 {¶ 62} After finding that city council passed an ordinance that was subject to the mayor's review, I would address the issue of whether the trial court properly granted the city's motion for summary judgment as follows.[1]
 {¶ 63} An appellate court reviews a trial court's decision on a motion for summary judgment de novo. Grafton v. Ohio Edison Co.,77 Ohio St.3d 102, 105, 1996-Ohio-336, 671 N.E.2d 241. To obtain a summary judgment under Civ.R. 56(C), the moving party must demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The moving party bears the initial burden of informing the court of the basis of the motion and identifying those portions of the record which support the requested judgment. Vahila v. Hall, 77 Ohio St.3d 421, 430, 1997-Ohio-259,674 N.E.2d 1164. If the moving party discharges its initial burden, the party against whom the motion is made then bears a reciprocal burden of specificity to oppose the motion. Id. See, also, Mitseff v. Wheeler
(1998), 38 Ohio St.3d 112, 526 N.E.2d 798.
 {¶ 64} Summary judgment is appropriate if, after construing the evidence most favorably for the party against whom the motion is made, reasonable minds can reach only a conclusion that is adverse to that party. Zivich v. Mentor Soccer Club, 82 Ohio St.3d 367, 369-370,1998-Ohio-389, 696 N.E.2d 201; Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327, 364 N.E.2d 267. Any doubts must be resolved in favor of the non-moving party. Murphy v. Reynoldsburg, 65 Ohio St.3d 356,358-359, 1992-Ohio-95, 604 N.E.2d 138.
 {¶ 65} C.R. Green maintains that Hartt's (the city's expert) deposition testimony created genuine issues of material fact. First, C.R. Green contends that Hartt "admits * * * ambiguity" in the city's zoning provision. C.R. Green mischaracterizes Hartt's testimony, however. Hartt testified that the city sought his assistance to resolve the question of whether a hair salon was a permitted operation in the subject district, but Hartt's unequivocal testimony was that it was his opinion that the city's zoning code prohibited a hair salon from operating in the subject district. Hartt explained that any ambiguity was on the part of the city (which is why it requested his review of the matter) and not as to his opinion. Thus, Hartt did not "admit * * * ambiguity" in the city's zoning code as C.R. Green contends.
 {¶ 66} Next, C.R. Green argues that Hartt's method of analysis was flawed. According to C.R. Green, Hartt testified "that zoning provisions must be strictly construed against the homeowner and in favor of the City." C.R. Green relies on Hartt's answer in the affirmative to the following question posed to him at his deposition: "If something isn't explicitly permitted in a zoning limitation, then it's prohibited?" C.R. Green mischaracterizes Hartt's testimony. Furthermore, in another portion of his deposition testimony, Hartt testified that he agreed, in some instances, zoning ordinances should be construed in favor of the property owner.
 {¶ 67} The crux of this appeal is whether the trial court erred in finding that the city presented a preponderance of reliable, probative and substantial evidence to support the decision of the mayor.
 {¶ 68} Mayfield Heights Codified Ordinances 1174.01 and 1174.02 govern the property at issue and provide as follows:
 {¶ 69} "1174.01 PERMITTED USES.
 {¶ 70} "The following uses are permitted in a U-4-B District:
 {¶ 71} "(a) Banks, general offices, administrative offices, professional offices and financial offices; (Ord. 1990-51. Passed 10-22-90.)
 {¶ 72} "(b) Any use not specified and determined to be similar by the Planning Commission and confirmed by Council majority. (Ord. 1991-36. Passed 9-9-91.)
 {¶ 73} "1174.02 PROHIBITED USES.
 {¶ 74} "The following uses are prohibited in a U-4-B District:
 {¶ 75} "(a) Retail stores or shops for the purpose of selling articles from the premises;
 {¶ 76} "(b) Restaurants, bars or other food service establishments;
 {¶ 77} "(c) Any automotive type services;
 {¶ 78} "(d) Medical and dental offices;
 {¶ 79} "(e) Any use as determined by the Planning Commission and confirmed by Council majority as not meeting the purpose and intent as specified in section 1174.01.
 {¶ 80} "In a U-4-B District, no building or premises shall be used and no building shall be erected which is arranged, intended or designed to be used for other than U-4-B use. (Ord. 1994-10. Passed 6-27-94.)"
 {¶ 81} C.R. Green argues that the ordinance is ambiguous about what constitutes a professional office; that its proposed operation was not for a retail store to sell articles and, thus, it was not a prohibited use; and that prohibition of its operation based on the city's foot traffic argument is "inherently arbitrary and vague."
 {¶ 82} The majority finds that "[i]t is clear from the language of the U-4-B zoning code that the appellant's business proposal falls well within the permitted uses." The majority reasons that the training and licensure requirements for hairstylists make it "clear * * * that a hair salon as an operation fits within the parameters of a professional office." In so finding and reasoning, the majority states that the city did not provide any "additional evidence to support its position that [C.R. Green's] business proposal was a non-permitted use; they also failed to provide any evidence that [C.R. Green] intended to operate a retail establishment." I disagree.
 {¶ 83} In Hartt's affidavit, submitted in support of the city's motion for summary judgment, he averred as follows:
 {¶ 84} "14. Affiant further states that based upon (i) Affiant's review of all the appropriate background related to this request; (ii) Affiant's experience in planning and zoning; and [(iii)] Affiant's interpretation of the relevant provisions in the Mayfield Heights Planning and Zoning Code, it is Affiant's opinion that a hair salon, as described by the Appellant, is a retail operation and is not a use that is permitted in the U-4-B Planned Office and Restrictive Service Districts;
 {¶ 85} "15. Affiant further states that Affiant has reached this opinion based on the following:
 {¶ 86} "A. The U-4-B Planned Office and Restrictive Service District is clearly intended as a district limited to office uses;
 {¶ 87} "B. Conversely, retail uses are specifically prohibited in this district;
 {¶ 88} "C. Service businesses requiring customers to come to the place of business are as much of a retail business as those businesses selling products;
 {¶ 89} "D. From a zoning perspective, any requirements of a regulatory agency (such as definitions for business, licensing, certification) do not alter the distinctions between office and retail uses; and
 {¶ 90} "E. For all of the other reasons, background, information and factors set forth in Affiant's Expert Report dated November 14, 2003[.]"
 {¶ 91} In opposition to the city's motion for summary judgment on this issue, C.R. Green submitted excerpts of Hartt's deposition testimony. It did not submit an expert report or any other evidence on its behalf.
 {¶ 92} As already mentioned, I believe that C.R. Green mischaracterizes the portions of Hartt's testimony upon which it relied. Hartt's opinions are undisputed. Thus, I would find that there was a preponderance of reliable, probative and substantial evidence to support the mayor's decision, and the trial court properly granted the city's motion for summary judgment.
 {¶ 93} Finally, I disagree with the majority's holding that C.R. Green suffered $107,970 in damages. Because I would hold that the trial court did not err in granting the city's motion for summary judgment, I would likewise hold that it did not err in denying C.R. Green's request for monetary damages.
[1] I would overrule C.R. Green's contention that summary judgment was an inappropriate means of resolving the case.