

# Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

December 31, 1991

Honorable Gene Green
Chairman
Jurisprudence Committee
Texas State Senate
P. O. Box 12068
Austin, Texas 78711

Opinion No. DM-71

Re: Authority of public housing authority to regulate tenants' legal possession of firearms (RQ-150)

Dear Senator Green:

You ask several questions regarding whether a municipal housing authority may adopt a rule under which a tenant of a public housing project it operates would be evicted "if the tenant possessed a firearm, including eviction for the possession of a firearm found in the tenant's home."[1] You ask first whether section 215.001 of the Local Government Code would restrict such action by a municipal housing authority. Subsection (a) of section 215.001 provides:

> A *municipality* may not adopt regulations relating to the transfer, *private ownership, keeping,* transportation, licensing, or registration of firearms, ammunition, or firearms supplies. (Emphasis added.)

Subsection (b) of section 215.001 provides that subsection (a) "does not affect the authority a municipality has under another law" to regulate, e.g., "the discharge of firearms," "the use of firearms in the case of an insurrection, riot, or natural disaster," or "the carrying of firearms" at certain public places or gatherings. A

---

[1]You refer specifically to the San Antonio Public Housing Authority. *See Housing Auth. of San Antonio v. Newton,* 235 S.W.2d 197 (Tex. Civ. App.--Waco 1950, no writ) (San Antonio Public Housing Authority is a municipal housing authority).

regulation restricting mere "possession" of a firearm would not fall within any of the exceptions set out in subsection (b) to the subsection (a) prohibition.[2]

The applicability of section 215.001 to a municipal housing authority depends partly on whether a municipal housing authority is a division or agent of a municipality, such that it would be subject to laws applicable to municipalities. The provisions of state law regarding the creation and operation of municipal housing authorities, Acts 1937, 45th Leg., ch. 462, are now found in chapter 392 of the Local Government Code. Section 392.011 provides that a municipal housing authority "is created in each municipality in the state" as "a public body corporate and politic" but that it "may not transact business or exercise its powers until the governing body of the municipality declares by resolution that there is a need for the authority." Local Gov't Code § 392.011(a) - (c). Powers of the authority are vested in five commissioners appointed by the mayor of the municipality. *Id.* §§ 392.031, 392.051.

While courts in some other jurisdictions have characterized municipal housing authorities created under provisions similar to those in chapter 392 as separate entities,[3] Texas authorities presented with the issue have uniformly held municipal housing authorities to be "divisions" of municipalities and, as such, subject to the laws applicable to municipalities. *Miers v. Housing Auth. of Dallas*, 266 S.W.2d 487 (Tex. Civ. App.--Dallas 1954, writ ref'd n.r.e.); *Aetna Casualty & Surety Co. v. Glidden Co.*, 283 S.W.2d 440 (Tex. Civ. App.--Eastland 1955), *rev'd on other grounds*, 291 S.W.2d 315 (Tex. 1956); Attorney General Opinions JM-687 (1987); JM-573 (1986); MW-132 (1980).

The *Miers* court dealt in part with the issue whether a municipal housing authority was within the scope of a statute excepting "this state, a county or a municipal corporation, or an irrigation, water improvement, or water power control district" from a bond requirement where there was pending litigation in condemnation actions. *See now* Prop. Code § 21.021. The court found the housing authority within the exception for "municipal corporations," stating that the authority "is a

---

[2]As we have not been supplied with the text of the regulation in question, we necessarily base this opinion on your description of that proposed regulation.

[3]*See, e.g., City of Paterson v. Housing Auth. of Paterson*, 233 A.2d 98 (N.J. Super. Ct. Law Div. 1967); *O'Keefe v. Dunn*, 215 A.2d 66 (N.J. Super. Ct. Law Div. 1965), cited in *Housing Auth. of Asbury Park v. Richardson*, 346 F. Supp. 1027, 1033 (D. N.J. 1972); *Tumulty v. Jersey City*, 155 A.2d 148 (N.J. Super. Ct. App. Div. 1959); *Housing Auth. v. City of Los Angeles*, 243 P.2d 515 (Cal. 1952); *State ex rel. Great Falls Housing Auth. v. City of Great Falls*, 100 P.2d 915 (Mont. 1940).

division of the City of Dallas and exists only with the consent of the City of Dallas." *Miers*, 266 S.W.2d at 490.

The *Aetna* court considered the applicability to a municipal housing authority contract of the provisions of article 5160, V.T.C.S., which require construction contractors with "this State or its counties or school districts or other subdivisions thereof or any municipality therein" to execute a "Penal Bond." 283 S.W.2d at 441. The court cited *Miers* and stated: "[w]e believe that the words 'any municipality' as used in said statute were intended to and did include Housing Authorities created under Article 1269k." 283 S.W.2d at 441, 442. (Prior to their placement in chapter 392 of the Local Government Code in 1987, the provisions relating to municipal housing authorities were found in now repealed article 1269k, V.T.C.S. *See* Acts 1987, 70th Leg., ch. 149, §§ 1, 49 (codification and repealer respectively).)

Attorney General Opinion MW-132 (1980) considered whether former article 2368a, V.T.C.S., providing for competitive bidding requirements for cities' and counties' purchases, applied to purchases by municipal housing authorities. Citing *Miers* and *Aetna*, the opinion concluded that article 2368a "applies to housing authorities as divisions of cities." (The provisions of article 2368a relating to municipal purchases were codified in 1987 in chapter 252 of the Local Government Code. *See* Acts 1987, 70th Leg., ch. 149, *supra.*)

Attorney General Opinions JM-687 (1987) and JM-573 (1986) adhered to the conclusion of Attorney General Opinion MW-132. Those opinions concluded that purchases made by a municipal housing authority under the Consolidated Supply Program administered by the federal government were nevertheless subject to the provisions of former article 2368a respecting municipal purchases.[4] *See also* Attorney General Opinion C-760 (1966) (county housing authority must comply with statutes applicable to counties where they do not conflict with provisions specific to housing authority; overruling Attorney General Opinion O-6339 (1945) which had held that a municipal housing authority vehicle was not within statute providing for exempt license plates for city vehicles).

The provision, now in Local Government Code section 215.001, that a "municipality may not adopt regulations relating to the . . . ownership [or] keeping . . . of firearms," was first adopted in 1985. Acts 1985, 69th Leg., ch. 838, § 1, at 2904. It

---

[4]The legislature has, since the issuance of Attorney General Opinions JM-687 and JM-573, specifically exempted such housing authority purchases from state law purchasing requirements. *See* note 5, *infra.*

must be presumed that in enacting the provisions of section 215.001 the legislature was aware of the scope state court and attorney general opinions had theretofore given to the term "municipality" -- specifically that the term included a municipal housing authority, the latter being a "division" of a municipality. We find no state statute, in chapter 392 or elsewhere, evidencing a legislative intent that municipal housing authorities not be subject to the prohibition in section 215.001.[5]

Nor do we find anything in the federal law or regulations pertaining to municipal housing authorities which under the supremacy clause, U.S. Const. art. VI, cl. 2, would restrict the applicability of section 215.001 to the proposed regulation in question. Federal law provides for the making of loans and contributions of federal funds to "public housing agencies." 42 U.S.C. § 1437 *et seq.*; *see also* 24 C.F.R. § 811 *et seq.* "[P]ublic housing agency" is defined as "any State, county, municipality, or other governmental entity or public body (or agency or instrumentality thereof) which is authorized to engage in or assist in the development or operation of low-income housing." 42 U.S.C. § 1437a(b)(6); *see also* Local Gov't Code § 392.052(f)(1) (housing authority may "borrow money or accept grants or other financial assistance from the federal government for, or in aid of, a housing project in the authority's area of operation"). We find no federal provisions applicable to housing authorities which are in conflict with the provisions of section 215.001 or which indicate a congressional intent that federally-funded housing authorities not be subject to such state law restrictions. *See English v. General Electric Co.*, 110 S. Ct. 2270 (1990) (test of whether state law is superseded under supremacy clause).

We do note that title 42, section 1437d(*l*)(5), of the United States Code requires local housing agency leases to "provide that any *criminal* activity that threatens the health, safety, or right to peaceful enjoyment of the premises ... engaged in by a public housing tenant, any member of the tenant's household, or any guest or other person under the tenant's control, shall be cause for termination of tenancy." (Emphasis added.) This provision might support a municipal housing authority regulation, to be incorporated in authority leases, providing for eviction for the *criminal* possession of a firearm. It would not in our opinion, however, supersede the section 215.001 restrictions with respect to the regulation in question, which, as we understand it, would restrict possession that was otherwise legal. *See* Penal Code §§ 46.02 (carrying certain weapons on or about

---

[5]*Compare* Local Gov't Code § 392.0565(a), added in 1989 (authority exempt from state law to the extent necessary to allow authority's participation in federal purchasing programs). Acts 1989, 71st Leg., ch. 1, § 81(a), at 107.

one's person a crime), 46.05 (crime for certain felons to "possess" a firearm "away from the premises where [they] live").[6]

Accordingly, we conclude that municipal housing authorities are, as "divisions" of municipalities, subject to the provisions of section 215.001. They would be precluded by subsection (a) of section 215.001 from adopting a regulation restricting tenants' otherwise legal possession of firearms. Such a regulation would "relat[e] to" the "private ownership" or "keeping" of firearms within the subsection (a) prohibition and would not fall within any of the exceptions to the subsection (a) prohibition set out in subsection (b) of section 215.001. Nor, does applicable federal law supersede the section 215.001 prohibition.

You also ask whether a municipal housing authority's powers under chapter 392 of the Local Government Code are broad enough to permit adoption of the regulation in question, and whether such a regulation would violate the provisions of article I, section 23, of the Texas Constitution relating to the right to "keep and bear arms." In view of our conclusion that a municipal housing authority is precluded by section 215.001 from adopting such a regulation, we need not reach these other issues here.

## S U M M A R Y

Section 215.001 of the Local Government Code prohibits a municipal housing authority from adopting a regulation providing for a tenant's eviction for the otherwise legal possession of a firearm.

Very truly yours,

DAN MORALES
Attorney General of Texas

---

[6]We note also that a local public housing agency receiving federal funds must enter into a contract with the United States Secretary of Housing and Urban Development. In such a contract, the secretary may make provisions pertaining, *inter alia*, to "the establishment of effective tenant-management relationships designed to assure that satisfactory standards of tenant security and project maintenance are formulated." 42 U.S.C. § 1437d(c)(4)(C). As we do not have a particular contract before us, we do not address here the effect of provisions therein, if any, bearing on an authority's regulation of tenants' possession of firearms.

**WILL PRYOR**
First Assistant Attorney General

**MARY KELLER**
Deputy Assistant Attorney General

**JUDGE ZOLLIE STEAKLEY (Ret.)**
Special Assistant Attorney General

**RENEA HICKS**
Special Assistant Attorney General

**MADELEINE B. JOHNSON**
Chair, Opinion Committee

Prepared by William Walker
Assistant Attorney General